1  BLOOD HURST & O'REARDON, LLP
   TIMOTHY G. BLOOD (149343)
2  LESLIE E. HURST (178432)
   THOMAS J. O'REARDON II (247952)
3  701 B Street, Suite 1700
   San Diego, CA  92101
4  Telephone: 619/338-1100
   Facsimile:  619/338-1101
5  tblood@bholaw.com
   lhurst@bholaw.com
6  toreardon@bholaw.com

7  Attorneys for Plaintiff

8  [Additional counsel appear on signature page.]

9

10              UNITED STATES DISTRICT COURT
               WESTERN DISTRICT OF KENTUCKY
11                  LOUISVILLE DIVISION

12 | IN RE: SKECHERS TONING SHOES | MASTER FILE No. 3:11-MD-2308-TBR |
   | PRODUCTS LIABILITY | |
13 | LITIGATION | MDL No. 2308 |
   | | |
14 | | Honorable Thomas B. Russell |
15 | | |
   | This document relates to: | |
16 | | |
   | Grabowski v. Skechers U.S.A., Inc., | Case No.:  3:12-CV-00204-TBR |
17 | S.D. California, C.A. No. 3:10-01300 | |
18

19

20

21              SETTLEMENT AGREEMENT

22

23

24

25

26

27

28

_Vertical left margin:_ BLOOD HURST & O'REARDON, LLP

1

## TABLE OF EXHIBITS

2 **Document**                                                    **Exhibit Number**

3

4 Claim Form ............................................................................................................ 1

5 Class Notice .......................................................................................................... 2

6 Final Order ........................................................................................................... 3

7 Final Judgment .................................................................................................... 4

8 Preliminary Approval Order ............................................................................... 5

9 Summary Settlement Notice ............................................................................... 6

10 Settlement Claim Procedures and Claim Calculation Protocol ...................... 7

11 Media and Notice Plan ....................................................................................... 8

12 Confidentiality Agreement ................................................................................. 9

13 Eligible Shoes ..................................................................................................... 10

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BLOOD HURST & O'REARDON, LLP

1    **IT IS HEREBY STIPULATED AND AGREED**, by, between and among

2    Plaintiff Tamara Grabowski ("Plaintiff Grabowski") and Defendant Skechers U.S.A.,

3    Inc. ("Defendant" or "Skechers"), with all terms as defined below, through their duly-

4    authorized counsel, that the above-captioned action, *Grabowski v. Skechers U.S.A.,*

5    *Inc.*, No. 3:12-cv-00204 (W.D. Ky.), is settled and judgment shall be entered on the

6    terms and conditions set forth in this Agreement, subject to the approval of the Court.

7        Plaintiff Venus Morga ("Plaintiff Morga") has concurrently pending in this

8    Court a related action captioned *Morga v. Skechers U.S.A., Inc.*, No. 3:12-cv-00205

9    (W.D. Ky.).  Plaintiff Morga agrees that her related action shall be settled through this

10   Agreement, and after the Final Settlement Date in this Action, counsel for Plaintiff

11   Morga shall request that her action be dismissed with prejudice.

12   **I.    INTRODUCTION**

13       **A.**    On June 18, 2010, Plaintiff Grabowski filed a class action complaint

14   captioned *Grabowski v. Skechers U.S.A., Inc.*, No. 3:10-cv-01300-JM(WVG) (the

15   "Action"), in the United States District Court for the Southern District of California.

16   Plaintiff Grabowski alleged, among other things, that Skechers manufactured, marketed

17   and sold toning footwear known as Shape-ups, Tone-ups, Skechers Resistance Runner,

18   and Shape-ups Toners (collectively "Skechers Toning Shoes").  Through a nationwide

19   advertising campaign, Skechers sold its products by advertising that wearing Skechers

20   Toning Shoes would provide a variety of fitness benefits ordinary footwear could not

21   provide.  According to Plaintiff Grabowski, Skechers' promises included that wearing

22   Skechers Toning Shoes would improve posture, promote weight loss, strengthen the

23   back, improve blood circulation, promote sleep, reduce stress, reduce physical stress on

24   knees, legs and ankle joints, and burn calories.  Plaintiff Grabowski also alleged that

25   Skechers advertised that clinical studies showed Skechers Toning Shoes were

26   scientifically proven to provide certain of these fitness benefits.  Plaintiff Grabowski's

27   complaint challenged these advertisements, asserting that Skechers Toning Shoes are

28   not proven to provide any of the claimed fitness benefits, and in fact, may cause or

BLOOD HURST & O'REARDON, LLP

exacerbate the very type of problems Skechers claims its footwear resolves.  Based on Skechers' alleged false and deceptive advertisements, Plaintiff Grabowski brought causes of action for violation of California's Consumers Legal Remedies Act ("CLRA"), Civ. Code §1770, *et seq.*, violation of the Unfair Competition Law ("UCL"), Bus. & Prof. Code §17200, *et seq.*, and breach of express warranty.

**B.** On August 25, 2010, roughly two months after the filing of the Action, another class action captioned *Morga v. Skechers U.S.A., Inc.*, No. 3:10-cv-01780-JM(WVG), was filed in the United States District Court for the District of California (the "Morga Action").  Plaintiff Morga's allegations were the same as those in the Action and included overlapping causes of action, including violations of California's consumer protection statutes, and Plaintiff Morga sought to represent the identical nationwide class as was alleged by Plaintiff Grabowski.  Concurrent with her complaint, Plaintiff Morga filed a notice of related case informing that under Civil Local Rule 40.1, her action was related to the Action.  On September 3, 2010, the Morga Action was deemed related to the Action and transferred to Judge Jeffrey Miller pursuant to the low number rule.

**C.** On February 18, 2011, amended class action complaints were filed in both the Action and the Morga Action.  The amended complaints, which were substantively identical to one another, re-alleged Skechers' purported violations of California's consumer protection laws, and asserted claims for breach of warranty.  The amended complaints also sought damages as permitted by the CLRA.  Plaintiff Grabowski and Plaintiff Morga (collectively, "Plaintiffs") sought to have their complaints consolidated, which request was opposed by Skechers and denied by the Court, meaning that there remain two related but separate actions pending before this Court.

**D.** Prior to commencement of the Grabowski and Morga actions, Class Counsel undertook an extensive investigation of the facts, which investigation included interviews with purchasers across the country, review of publicly available Skechers'

BLOOD HURST & O'REARDON, LLP

advertisements of Shape-ups, and consultation with a medical doctor on the physical effects of rocker bottom shoes.  Based in part on the information gained in the pre-filing investigation, Plaintiff's Counsel served comprehensive formal discovery requests on Skechers in December 2010.  Counsel's investigation continued during the pendency of the Action and settlement negotiations.

     **E.**     Skechers filed answers to the amended complaints on August 20, 2010 and March 7, 2011 in which it expressly denied the allegations therein.

     **F.**     On May 11, 2012, a second amended class action complaint was filed in the Action.  Skechers filed an answer to the second amended complaint on May 15, 2012, in which it expressly denied the allegations therein.

     **G.**     Skechers expressly denies any wrongdoing and does not admit or concede any actual or potential fault, wrongdoing, or liability in connection with any facts or claims that have been alleged against it in the Action and the Morga Action. Skechers contends that the fitness benefits of Shape-ups and other rocker bottoms shoes have been extensively studied and confirmed in numerous well-designed clinical studies, many of which have been published in peer-reviewed journals.  This body of scientific literature and experts in the field of biomechanics confirm that competent and reliable scientific evidence supports the benefits advertised by Skechers for these shoes. Skechers further denies that the Action and the Morga Action meet the requisites for certification as a class action under federal law, except as part of a settlement class as described in this Agreement.  Nevertheless, Skechers considers it desirable to resolve this Action and the Morga Action on the terms stated herein, in order to avoid further expense, inconvenience, and interference with its business operations, and to dispose of burdensome litigation.  Therefore, Skechers has determined that settlement of this Action and the Morga Action on the terms set forth herein is in its best interest.

     **H.**     This Agreement reflects a compromise between the Parties, and shall in no event be construed as or deemed an admission or concession by any party of the truth of any allegation or the validity of any purported claim or defense asserted in any

BLOOD HURST & O'REARDON, LLP

1    of the pleadings in the Litigation, or of any fault on the part of Skechers, and all such

2    allegations are expressly denied.  Nothing in this Agreement shall constitute an

3    admission of liability or be used as evidence of liability, by or against any party hereto.

4        **I.**      Skechers has produced relevant documents, including electronically

5    stored information, to Plaintiff.  Class Counsel have thoroughly reviewed the produced

6    materials.  In particular, Skechers has produced the following documentation regarding

7    Eligible Shoes: (i) product design, initiative and development; (ii) scientific studies and

8    research; (iii) marketing, advertising, media and public relations; and (iv) sales and

9    pricing data.  In total, Class Counsel was given access to approximately 6,574

10    documents encompassing 24,500 pages and over 13.5 GB of data.  In addition, Class

11    Counsel conducted interviews of Skechers corporate witnesses who have been involved

12    with the Eligible Shoes to address the following subjects: (i) advertising and marketing;

13    (ii) pricing; (iii) design and development; and (iv) sales and revenue.  Before entering

14    into this Agreement, Class Counsel had conducted a thorough examination and

15    evaluation of the relevant law, facts and allegations to assess the merits of the claims

16    and could reasonably assess the strength of plaintiffs' claims and Skechers' liability,

17    including its defenses.

18        **J.**      On May 16, 2012, working in conjunction with Class Counsel, the

19    Federal Trade Commission ("FTC") entered into a Stipulated Final Judgment and

20    Order for Permanent Injunction and Other Equitable Relief ("Stipulated Order") with

21    Skechers concerning its Skechers Toning Shoes.  Pursuant to the Stipulated Order, the

22    FTC filed a Complaint for Permanent Injunction and Other Equitable Relief against

23    Skechers and its Skechers Toning Shoes alleging violations of the Federal Trade

24    Commission Act and specifically 15 U.S.C. § 45(a), which prohibits "unfair or

25    deceptive acts or practices in or affecting commerce," and 15 U.S.C. § 52, which

26    prohibits the dissemination of any false advertisement in or affecting commerce.

27    Actions by the Attorneys General in 44 states and the District of Columbia (the "AG

28    Actions") were filed against Skechers.  Consent Judgments and Agreed Final

BLOOD HURST & O'REARDON, LLP

00045019

Judgments ("Consent and Agreed Final Judgments") were or will be entered in the AG Actions, settling all claims. This Settlement between Plaintiffs and Skechers, the Stipulated Order entered into between the FTC and Skechers, and the Consent and Agreed Final Judgments entered into between Skechers and the state Attorneys General are the products of work performed by Class Counsel, the FTC, and the state Attorneys General in conjunction, and the foregoing have coordinated these resolutions to maximize the settlement consideration available to the Class under this Settlement, including the monetary relief available to Class Members.

**K.** Based upon their review, investigation, and evaluation of the facts and law relating to the matters alleged in the pleadings, Plaintiffs and Class Counsel, on behalf of the other members of the proposed Class, have agreed to settle the Action pursuant to the provisions of this Agreement, after considering, among other things: (1) the substantial benefits to the Class Members under the terms of this Agreement; (2) the risks, costs, and uncertainty of protracted litigation, especially in complex actions such as this, as well as the difficulties and delays inherent in such litigation; and (3) the desirability of consummating this Agreement promptly in order to provide effective relief to the Class Members.

## II.  <u>DEFINITIONS</u>

**A.** As used in this Agreement and the attached exhibits (which are an integral part of this Agreement and are incorporated in their entirety by reference), the following terms have the following meanings, unless this Agreement specifically provides otherwise:

**1.** "Action" means the lawsuit styled *Grabowski v. Skechers U.S.A., Inc.*, No. 3:12-cv-00204 (W.D. Ky.).

**2.** "Agreement" means this Settlement Agreement and the exhibits attached hereto or incorporated herein, including any subsequent amendments agreed to

by the Parties and any exhibits to such amendments, which are the settlement (the "Settlement").

3. "Attorneys' Fees and Expenses" means such funds as may be awarded by the Court to Class Counsel from Skechers to compensate all Plaintiffs' Counsel for their fees and expenses in connection with the Action and the Settlement, as described in Section IX of this Agreement.

4. "Claim" means the claim of a Class Member or his or her representative submitted on a Claim Form as provided in this Agreement.

5. "Claimant" means a Class Member who has submitted a Claim.

6. "Claim Form" means the document, in substantially the same form as Exhibit 1 attached to this Agreement.

7. "Claim Period" means the time period in which Class Members may submit a Claim Form for review to the Class Action Settlement Administrator. The Claim Period shall run until 30 days after the Fairness Hearing as initially set by the Court.

8. "Claim Process" means that process for submitting Claims described in this Agreement.

9. "Class Action Settlement Administrator" means the third-party agent(s) or administrator(s) agreed to by the Parties and appointed by the Court. The Parties agree that Rust Consulting, Inc. shall be retained to implement the mailed notice, the website, claim review and related requirements of this Agreement as set forth in Sections IV-VI of this Agreement.

10. "Class" means all persons or entities that, during the Class Period, purchased in the United States any Eligible Shoes. Excluded from the Class are: (a) Skechers' Board members or executive-level officers, including its attorneys; (b) persons or entities who purchased the Eligible Shoes primarily for the purpose of resale; (c) retailers or re-sellers of Eligible Shoes; (d) governmental entities; (e) persons or entities who or which timely and properly exclude themselves from the Class as

BLOOD HURST & O'REARDON, LLP

provided in the Agreement; and (f) persons or entities who purchased the Eligible Shoes via the Internet or other remote means while not residing in the United States.

**11.** "Class Member" means a member of the Class.

**12.** "Class Counsel" means:  Timothy G. Blood, of Blood Hurst & O'Reardon, LLP, and Janine L. Pollack, of Milberg LLP.

**13.** "Class Notice" means a notice substantially in the form attached as Exhibit 2.

**14.** "Class Period" means the period from August 1, 2008 up to and including the date of the first dissemination of the Summary Settlement Notice or Class Notice, whichever is earlier.

**15.** "Court" means the United States District Court for the Southern District of California.

**16.** "Eligible Shoes" means the following types of Skechers' footwear: (a) Shape-ups rocker bottom shoes ("Shape-ups"); (b) the Resistance Runner rocker bottom shoes ("Resistance Runner"); (c) Shape-ups Toners/Trainers, and Tone-ups with podded outsoles ("Podded Sole Shoes"); and (d) Tone-ups non-podded sandals, boots, clogs, and trainers ("Tone-ups (Non-Podded Sole)").  The complete list of Eligible Shoes sold under these toning footwear lines is set forth in Exhibit 10.

**17.** "Fairness Hearing" means the hearing at or after which the Court shall make a final decision whether to approve this Agreement as fair, reasonable, and adequate.

**18.** "Final Order and Final Judgment" means the Court's order approving the Settlement and this Agreement, as described in Section X.B of this Agreement, which is to be substantially in the forms attached hereto as Exhibits 3 and 4, respectively.

**19.** "Final Settlement Date" means the date on which the Final Order and Final Judgment approving this Agreement becomes final ("Final Approval Date").  For purposes of this Agreement, Final Approval Date means:

BLOOD HURST & O'REARDON, LLP

a.      For all matters other than Section IX, either:

(i)      if no appeal has been taken from the Final Order and Judgment, "Final Approval Date" means the date on which the time to appeal therefrom has expired pursuant to Federal Rule of Appellate Procedure 4; or

(ii)      if any appeal has been taken from the Final Order and Final Judgment, "Final Approval Date" means the date on which all appeals therefrom, including petitions for rehearing or reargument pursuant to Federal Rule of Appellate Procedure 40, petitions for rehearing en banc pursuant to Federal Rule of Appellate Procedure 35 and petitions for certiorari pursuant to Rule 13 of the Rules of the Supreme Court or any other form of review, have been finally disposed of in a manner that affirms the Final Order and Judgment;

b.      Solely for the purposes of payments made pursuant to Section IX, below, the later of the dates set forth above in 19(a)(i) and (ii) or the date on which the last of the six (6) Later-Filed Actions is dismissed with prejudice.

c.      Notwithstanding either a. or b., above, if Class Counsel and Skechers agree in writing, "Final Approval Date" can occur on any other agreed date.

**20.**      "Media Notice Administrator" means the Court-appointed third-party agent or administrator agreed to by the Parties and appointed by the Court.  The Parties agree that Jeanne Finegan of the Garden City Group, Inc. shall be retained to design, consult on and implement the notice to the class described in Section V of this Agreement.

**21.**      "Parties" means Plaintiff Grabowski and Skechers, collectively, as each of those terms is defined in this Agreement.

**22.**      "Plaintiff Grabowski" means Tamara Grabowski.

**23.**      "Plaintiff Morga" means Venus Morga.

**24.**      "Plaintiffs" means Plaintiff Grabowski and Plaintiff Morga.

**25.**      "Plaintiffs' Counsel" means counsel for Plaintiffs, who are:  Blood Hurst & O'Reardon, LLP; Milberg LLP; Bonnett, Fairbourn, Friedman & Balint, P.C.;

1  Shepherd, Finkelman, Miller & Shah, LLP; Edgar Law Firm, LLC; and Cuneo, Gilbert
2  & LaDuca, LLP.

3      **26.**    "Preliminary Approval Order" means the order to be entered by
4  the Court preliminarily approving the Settlement as outlined in Section X.A of this
5  Agreement and that is substantially in the form attached hereto as Exhibit 5.

6      **27.**    "Release" means the release and waiver set forth in Section VIII of
7  this Agreement.

8      **28.**    "Released Parties" means Skechers, its past and present officers,
9  directors, employees, stockholders, agents, attorneys, administrators, successors,
10  subsidiaries, suppliers, distributors, assigns, affiliates, joint-ventures, partners,
11  members, divisions, predecessors, authorized retailers, resellers, and wholesalers of
12  Eligible Shoes for resale, including, without limitation, Skechers concept stores,
13  Skechers factory outlet stores, Skechers warehouse outlets, Skechers.com,
14  myshapeups.com, soholab.com, and Skechers' Outlets.

15      **29.**    "Settlement Claim Procedures and Claim Calculation Protocol"
16  means the protocol attached hereto as Exhibit 7.

17      **30.**    "Skechers" means Skechers U.S.A., Inc.

18      **31.**    "Skechers Counsel" means O'Melveny & Myers LLP and Lewis
19  Brisbois Bisgaard & Smith LLP.

20      **32.**    "Summary Settlement Notice" means the Summary Class Notice
21  for publication substantially in the same form as Exhibit 6.

22      **B.**    Other capitalized terms used in this Agreement but not defined in this
23  Section II shall have the meanings ascribed to them elsewhere in this Agreement.

24      **C.**    The terms "he or she" and "his or her" include "it" or "its" where
25  applicable.

26
27
28

BLOOD HURST & O'REARDON, LLP

## III.   CERTIFICATION OF THE SETTLEMENT CLASS

Skechers, while continuing to deny that the Action meets the requisites for class certification under Fed. R. Civ. P. 23 for any purpose other than settlement, hereby consents, solely for purposes and in consideration of the Settlement set forth herein, to the certification of the settlement Class, to the appointment of Class Counsel, and to the conditional approval of Plaintiff Grabowski as a suitable representative of the Class.

The certification of the settlement Class, the appointment of the Plaintiff as class representative, and the appointment of Plaintiffs' Counsel to act as Class Counsel, shall be binding only with respect to this Settlement and this Agreement.  If the Court fails to approve this Agreement and the Settlement proposed herein for any reason, or if this Agreement and the Settlement proposed herein is terminated, cancelled, or fails to become effective for any reason whatsoever, this class certification, to which the parties have stipulated solely for the purposes and in consideration of the Settlement of this Action, this Agreement, and all the provisions of the Preliminary Approval Order, shall be vacated by their own terms, and the litigation of the Action shall revert to its status with respect to class certification as it existed prior to the date of this Agreement. In that event, Skechers shall retain all rights it had immediately preceding the execution of this Agreement to object to the maintenance of the lawsuit as a class action, and in that event, nothing in this Agreement or other papers or proceedings related to the Settlement shall be used as evidence or argument by any party concerning whether the Action may properly be maintained as a class action under applicable law.

## IV.   SETTLEMENT RELIEF

Settlement relief shall consist of two primary components:  (1) payments to Class Members who submit valid Claims; and (2) conduct changes implemented by Skechers relating to its marketing and advertising of Skechers Toning Shoes.

### A.   Relief Amount

1       **1.**     In conjunction with the Consent Judgment entered into between
2   Skechers and the FTC, Skechers shall deposit $40 million (the "Escrowed Funds") in
3   escrow to be held by Rust Consulting, which shall be the "Escrow Agent."  Once
4   Skechers deposits the Escrowed Funds with the Escrow Agent, any risk of loss shall
5   pass from Skechers to the Escrow Agent.

6       **2.**     The Escrowed Funds may be used for the payment of:  (a) the
7   costs and expenses that are associated with disseminating the notice to the Class,
8   including, but not limited to, the Class Notice and the Summary Settlement Notice; (b)
9   the costs and expenses associated with claims administration or other costs of
10  administration agreed to by the parties; and (c) timely, valid, and approved Claims
11  submitted by Class Members pursuant to the Claim Process.  Class Counsel must
12  approve any payment of costs or expenses under subsections (a) and (b) of this
13  paragraph.  Approval and payment of Claims under subsection (c) of this paragraph
14  shall be in accordance with the terms of the Settlement Claim Procedures and Claim
15  Calculation Protocol.  Skechers shall not be liable for payment of any costs, expenses,
16  or Claims authorized under this paragraph beyond its deposit of the Escrowed Funds.

17      **B.**     Claim Form Submission and Review

18      **1.**     Class Members may submit a Claim to the Claim Process during
19  the Claim Period and the Class Action Settlement Administrator shall review and
20  process the Claim pursuant to the Settlement Claim Procedures and Claim Calculation
21  Protocol, which is attached as Exhibit 7.  As part of the Claim Process, Class Members
22  shall be eligible for the relief provided in this Agreement, provided Class Members
23  complete and timely submit the Claim Form, which shall be included with the Class
24  Notice, to the Class Action Settlement Administrator within the Claim Period, except
25  as otherwise provided in the Settlement Claim Procedures and Claim Calculation
26  Protocol, attached as Exhibit 7.

27      **2.**     As further specified in the Settlement Claim Procedures and Claim
28  Calculation Protocol, the Claim Form shall advise Class Members that, upon request

BLOOD HURST & O'REARDON, LLP

00045019

and under certain enumerated circumstances, the Class Action Settlement Administrator has the right to request verification of the purchase of Eligible Shoes, including, but not limited to, receipt(s) or other documentation demonstrating purchase of any and all of the Eligible Shoes during the Class Period.  If the Class Member does not timely comply and/or is unable to produce documents to substantiate and/or verify the information on the Claim Form and the Claim is otherwise not approved, the Claim shall be disqualified.

3.      The Class Action Settlement Administrator shall provide periodic updates to Class Counsel, the FTC, and Skechers regarding Claim Form submissions beginning not later than one week before the Fairness Hearing date and continuing on no less than a monthly basis thereafter.

4.      The Class Action Settlement Administrator may begin to pay timely, valid, and approved Claims no earlier than ten (10) days after the close of the Claim Period, if and only if: (a) this period is after the issuance of the Court's Final Order and Final Judgment approving the Settlement; and (b) if the Final Settlement Date has not yet occurred, Skechers has approved in writing the commencement of such payment.  Not later than sixty (60) days after either (i) the occurrence of the Final Settlement Date, or (ii) the date that Skechers, in its sole discretion, approves the payment of Claims prior to the occurrence of the Final Settlement Date, whichever is earlier, the Class Action Settlement Administrator shall have completed the payment to Class Members who have submitted timely, valid and approved Claims pursuant to the Claim Process.

5.      The relief to be provided to eligible Class Members shall be as follows:

| Shoes | Initial Amount | Maximum Amount |
|---|---|---|
| Shape-ups | **$40.00** | **$80.00** |
| Podded Sole Shoes | **$27.00** | **$54.00** |

| Tone-ups (Non-Podded Sole) | **$20.00** | **$40.00** |
|---|---|---|
| Resistance Runner | **$42.00** | **$84.00** |

**C.**    Adjustments and Remaining Funds

**1.**    If the total of the timely, valid and approved Claims submitted by Class Members exceeds the available relief, minus any covered costs and expenses, each eligible Class Member's award shall be reduced on a *pro rata* basis.

**2.**    If the total of the timely, valid and approved claims submitted by Class Members is less than the available relief, minus any covered fees and costs, each eligible Class Member's award shall be increased on a *pro rata* basis, with a maximum increase of up to, but not more than, double the initial amount as set forth in Section IV.B.5 above, not including any applicable sales taxes.

**3.**    If there are any funds remaining from the claims process, including, but not limited to, un-cashed distributions made payable to eligible Class Members, any remaining funds shall be paid to the Federal Trade Commission.

**D.**    Conduct Changes

In addition to the relief discussed above, as part of this Agreement, Skechers will agree to implement the conduct changes that are detailed in the Stipulated Order that will be entered into between Skechers and the FTC.

**V.    NOTICE TO THE CLASS**

**A.**    Duties of the Class Action Settlement Administrator and the Media Notice Administrator

**1.**    The Media Notice Administrator shall be responsible for, without limitation, consulting on and designing the notice to the Class via various forms of media, including implementing the media purchases.  In particular, the Media Notice Administrator shall be responsible for: (a) arranging for the publication of the Summary Settlement Notice; (b) designing and implementing notice to the Class by

various electronic media, including social media and electronic publications; (c) press releases, as discussed in the Media and Notice Plan attached as Exhibit 8 to this Agreement; (d) responding to requests from Class Counsel, the FTC and/or Skechers' Counsel; and (e) otherwise implementing and/or assisting with the dissemination of the notice of the Settlement.

2.      The Class Action Settlement Administrator shall be responsible for, without limitation, dissemination of Class Notice by mail and implementing the terms of the Claim Process and related administrative activities that include communications with Class Members concerning the Settlement, Claim Process, and their options thereunder.  In particular, the Class Action Settlement Administrator shall be responsible for: (a) printing, mailing or arranging for the mailing of the Class Notice; (b) handling returned mail not delivered to Class Members; (c) attempting to obtain updated address information for any Class Notice returned without a forwarding address; (d) making any additional mailings required under the terms of this Agreement; (e) establishing a website that contains the Claim Form that can be completed and submitted on-line; (f) establishing a toll-free voice response unit with message and live operator capabilities to which Class Members may refer for information about the Action and the Settlement; (g) receiving and maintaining on behalf of the Court any Class Member correspondence regarding requests for exclusion and objections to the Settlement; (h) forwarding inquiries from Class Members to Class Counsel or their designee for a response, if warranted; (i) establishing a post office box for the receipt of Claim Forms, exclusion requests, and any correspondence; (j) reviewing Claim Forms according to the review protocols agreed to by the Parties and set forth in Exhibit 7; and (k) otherwise implementing and/or assisting with the claim review process and payment of the claims.

3.      The Media Notice Administrator and the Class Action Settlement Administrator shall coordinate their activities to minimize costs in effectuating the terms of this Agreement.

BLOOD HURST & O'REARDON, LLP

**4.** If the Class Action Settlement Administrator or the Media Notice Administrator fail to keep Class Counsel, Skechers or Skechers' Counsel informed, make a material or fraudulent misrepresentation to, or conceal requested material information from, Class Counsel, Skechers, or Skechers' Counsel, then the Party from whom information was withheld or to whom the misrepresentation is made shall, in addition to any other appropriate relief, have the right to demand that the Class Action Settlement Administrator and/or the Media Notice Administrator, as applicable, immediately be replaced. If the Class Action Settlement Administrator and/or the Media Notice Administrator fail to perform adequately on behalf of Skechers or the Class or Class Counsel, the Parties may agree to remove the Class Action Settlement Administrator and/or the Media Notice Administrator. The Parties shall not unreasonably withhold consent to remove the Class Action Settlement Administrator and/or the Media Notice Administrator, but this shall occur only after Skechers and Class Counsel have attempted to resolve any disputes regarding the retention or dismissal of the Class Action Settlement Administrator and/or the Media Notice Administrator in good faith, and, if they are unable to do so, after the matter has been referred to the Court for resolution.

**5.** The Class Action Settlement Administrator and/or the Media Notice Administrator may retain one or more persons to assist in the completion of his or her responsibilities.

**6.** Not later than ten (10) days before the date of the Fairness Hearing, the Class Action Settlement Administrator shall file with the Court a list of persons who have opted out or excluded themselves from the Settlement.

**7.** Notwithstanding anything else contained in this Agreement, if at least 10,000 Class Members opt out of the Class, Skechers shall have the right, but not the obligation, at any time prior to the Fairness Hearing and at its sole discretion, to notify Plaintiff's Counsel of its election to terminate this Agreement.

BLOOD HURST & O'REARDON, LLP

00045019

**8.** Not later than forty-five (45) days before the date of the Fairness Hearing, the Media Notice Administrator or the Class Action Settlement Administrator shall file with the Court the details outlining the scope, methods and results of the notice program.

**9.** The Class Action Settlement Administrator shall promptly after receipt provide copies of any requests for exclusion, objections, and/or related correspondence to Class Counsel and Skechers' Counsel.

**10.** Within (30) days of the completion of distribution of all payments to Class Members by the Class Action Settlement Administrator, the Class Action Settlement Administrator shall provide to Skechers or to such other persons as Skechers may direct, an electronically searchable alphabetical list of consumers who reside in each state who have made claims out of the proposed restitution fund, their contact information, and the amount paid to each consumer.

**B.** Class Notice

**1.** Dissemination of the Mailed Class Notice

a. Beginning not later than 30 calendar days after entry of the Preliminary Approval Order and to be substantially completed not later than 90 calendar days before the Fairness Hearing, and subject to the requirements of the Preliminary Approval Order and this Agreement, the Class Action Settlement Administrator shall send the Class Notice by First-Class U.S. Mail, proper postage prepaid, to: (i) each reasonably identifiable Class Member's last known address reasonably obtainable from Skechers, which addressees shall be provided to the Class Action Settlement Administrator by Skechers no later than five (5) business days after entry of the Preliminary Approval Order, subject to the existence of such information and its current possession, if at all, by Skechers; and (ii) each appropriate State and Federal official, as specified in 28 U.S.C. § 1715. The Class Notice shall otherwise comply with Fed. R. Civ. P. 23 and any other applicable statute, law, or rule, including, but not limited to, the Due Process Clause of the United States Constitution.

BLOOD HURST & O'REARDON, LLP

1            b.      The Class Action Settlement Administrator shall: (a) re-

2  mail any notices returned by the United States Postal Service with a forwarding address

3  that are received by the Class Action Settlement Administrator at least forty-five (45)

4  days before the Fairness Hearing; (b) by itself or using one or more address research

5  firms, as soon as practicable following receipt of any returned notices that do not

6  include a forwarding address, research any such returned mail for better addresses and

7  promptly mail copies of the Class Notice to the better addresses so found.

8          **2.**    <u>Contents of the Class Notice</u>:  The Claim Form and the Class

9  Notice shall be in a form substantially similar to the document attached to this

10  Agreement as Exhibits 1 and 2, respectively, and shall advise Class Members of the

11  following:

12           a.    <u>General Terms</u>:     The Class Notice shall contain a

13  plain, neutral, and objective and concise description of the nature of the Action and the

14  proposed Settlement.

15           b.    <u>Opt-Out Rights</u>:    The Class Notice shall inform Class

16  Members that they have the right to opt out of the Settlement.  The Class Notice shall

17  provide the deadlines and procedures for exercising this right.

18           c.    <u>Objection to Settlement</u>:    The Class Notice shall inform

19  Class Members of their right to object to the proposed Settlement and appear at the

20  Fairness Hearing.  The Class Notice shall provide the deadlines and procedures for

21  exercising these rights.

22           d.    <u>Fees and Expenses</u>:  The Class Notice shall inform Class

23  Members about the amounts being sought by Plaintiffs' Counsel as Attorneys' Fees and

24  Expenses and individual awards to the Plaintiffs, and shall explain that Skechers will

25  pay the fees and expenses awarded to Plaintiffs' Counsel and individual awards to the

26  Plaintiffs in addition to amounts being made available for relief to Class Members and

27  without reducing such relief amounts.

28

BLOOD HURST & O'REARDON, LLP

BLOOD HURST & O'REARDON, LLP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

e.      Consumer Information:  The Class Notice shall inform the Class Members that any information they provide may be submitted to a federal or state agency in the administration of this relief.

f.      Claim Form:  The Class Notice shall include the Claim Form, which shall inform the Class Member that he or she must complete and timely return the Claim Form to be eligible to obtain relief pursuant to this Agreement.  The Claim Form shall inform the Class Members that any information they provide may be submitted to a federal or state agency in the administration of this relief.

**C.**      The Summary Settlement Notice:  Beginning not later than thirty (30) days after entry of the Preliminary Approval Order and to be completed not later than sixty (60) days thereafter, the Media Notice Administrator shall publish the Summary Settlement Notice as described in the Media and Notice Plan and in such additional newspapers, magazines and/or other media outlets as shall be agreed upon by the Parties.  The form of Summary Settlement Notice agreed upon by the Parties is in the form substantially similar to the one attached to this Agreement as Exhibit 6.  The Class Action Settlement Administrator shall begin accepting Claim Forms as they are submitted by Class Members for processing, which shall begin no later than six (6) months after entry of the Preliminary Approval Order.

**D.**      Internet Website:  The Class Action Settlement Administrator shall establish an Internet website, www.skecherssettlement.com, which will inform Class Members of the terms of this Agreement, their rights, dates and deadlines and related information.  The website shall include, in .pdf format, materials agreed upon by the Parties and/or required by the Court, and will be operational and live by the date of the first publication of the Summary Settlement Notice or mailing of the Class Notice, whichever is earlier.

**E.**      Toll-Free Telephone Number: The Class Action Settlement Administrator shall establish a toll-free telephone number that will provide Settlement-related information to Class Members.  This toll-free telephone number will be

operational by the date of the first publication of the Summary Settlement Notice or mailing of the Class Notice, whichever is earlier.

## VI.   REQUESTS FOR EXCLUSION

**A.**     Any Class Member who wishes to be excluded from the Class must mail a written request for exclusion to the Media Notice Administrator at the address provided in the Class Notice, postmarked no later than thirty (30) days before the Fairness Hearing (if the Fairness Hearing is continued, the deadline runs from the first-scheduled Fairness Hearing), or as the Court otherwise may direct, and specifying that he or she wants to be excluded.  The Class Action Settlement Administrator shall forward copies of any written requests for exclusion to Class Counsel and Skechers' Counsel.  The Class Action Settlement Administrator shall file a list reflecting all timely requests for exclusion with the Court no later than ten (10) days before the Fairness Hearing.

**B.**     Any potential Class Member who does not file a timely written request for exclusion as provided in the preceding Section VI.A shall be bound by all subsequent proceedings, orders, and judgments in the Action, including, but not limited to, the Release, even if he or she has litigation pending or subsequently initiates litigation against Skechers relating to the claims and transactions released in the Action.  Skechers' Counsel shall provide to the Class Action Settlement Administrator, within ten (10) business days of the entry of the Preliminary Approval Order, a list of all counsel for anyone who has litigation against Skechers that involves the Eligible Shoes.  The Class Action Settlement Administrator shall mail copies of the Class Notice to all such legal counsel.  Skechers will promptly direct this administrator to serve the Class Notice on counsel for any Class Members who subsequently initiate litigation, arbitration, or other proceedings against Skechers relating to claims alleging events occurring during the Class Period, the Eligible Shoes, and/or otherwise involving the Release.

## VII.   <u>OBJECTIONS TO SETTLEMENT</u>

A.      Any Class Member who has not filed a timely written request for exclusion and who wishes to object to the fairness, reasonableness, or adequacy of this Agreement or the proposed Settlement, or to the award of Attorneys' Fees and Expenses, or the individual awards to Plaintiffs, must deliver to the Class Counsel identified in the Class Notice and to Skechers' Counsel, and file with the Court, no later than thirty (30) days before the Fairness Hearing (if the Fairness Hearing is continued, the deadline runs from the first-scheduled Fairness Hearing), or as the Court otherwise may direct: (a) a written statement of the objections, as well as the specific reason(s), if any, for each objection, including all legal and factual support the Class Member wishes to bring to the Court's attention; (b) any evidence or other information the Class Member wishes to introduce in support of the objections; (c) a statement of whether the Class Member intends to appear and argue at the Fairness Hearing; and (d) a list of the Class Member's purchase(s) of Eligible Shoes.  Class Members may do so either on their own or through an attorney retained at their own expense.  The objection must include proof of purchase of Eligible Shoes and the Class Member's home address.  Acceptable proof of purchase includes an itemized cash register receipt, a credit card receipt or a credit card statement that sufficiently indicates the purchase of the Eligible Shoes.

B.      Any Class Member who files and serves a written objection, as described in the preceding Section VII.A, may appear at the Fairness Hearing, either in person or through personal counsel hired at the Class Member's expense, to object to the fairness, reasonableness, or adequacy of this Agreement or the proposed Settlement, or to the award of Attorneys' Fees and Expenses or awards to the individual Plaintiffs. Class Members or their attorneys who intend to make an appearance at the Fairness Hearing must deliver a notice of intention to appear to one of the Class Counsel identified in the Class Notice and to Skechers' Counsel, and file said notice with the Court, no later than thirty (30) days before the Fairness Hearing (if the Fairness

Hearing is continued, the deadline runs from the first-scheduled Fairness Hearing), or as the Court may otherwise direct.

**C.** Any Class Member who fails to comply with the provisions of Sections VII.A and VII.B above shall waive and forfeit any and all rights he or she may have to appear separately and/or to object, and shall be bound by all the terms of this Agreement and by all proceedings, orders and judgments, including, but not limited to, the Release, in the Actions.

**D.** Any Class Member who objects to the Settlement shall be entitled to all of the benefits of the Settlement if this Agreement and the terms contained therein are approved, as long as the objecting Class Member complies with all requirements of this Agreement applicable to Class Members, including the timely submission of valid Claim Forms and other requirements discussed herein.

## VIII.  RELEASE AND WAIVER

**A.** The Parties agree to the following release and waiver, which shall take effect upon the Final Settlement Date.

**B.** In consideration for the Settlement benefits described in this Agreement, Plaintiffs and the other members of the Class, on behalf of themselves, their heirs, guardians, assigns, executors, administrators, predecessors, and/or successors, will fully, finally and forever release, relinquish, acquit, and discharge the Released Parties from, and shall not now or hereafter institute, maintain, or assert on their own behalf, on behalf of the Class or on behalf of any other person or entity, any and all manner of claims, actions, causes of action, suits, rights, debts, sums of money, payments, obligations, reckonings, contracts, agreements, executions, promises, damages, liens, judgments and demands of whatever kind, type or nature whatsoever, both at law and in equity, whether past, present or future, mature or not yet mature, known or unknown, suspected or unsuspected, contingent or non-contingent, whether based on federal, state or local law, statute, ordinance, regulation, code, contract,

common law, or any other source, or any claim that Plaintiff Grabowski or Class Members ever had, now have, may have, or hereafter can, shall or may ever have against the Released Parties that were or reasonably could have been alleged in the Action or in any other court, tribunal, arbitration panel, commission, agency, or before any governmental and/or administrative body, or any other adjudicatory body, on the basis of, connected with, arising from or in any way whatsoever relating to claims that were or reasonably could have been alleged in the Action, including, but without in any way limiting the generality of the foregoing, arising from, directly or indirectly, or in any way whatsoever pertaining or relating to (1) the claims alleged in the Action, (2) any communications, disclosures, nondisclosures, representations, statements, claims, omissions, warnings, messaging, design, testing, marketing, advertising, promotion, packaging, displays, brochures, studies, manufacture, distribution, operation, performance, functionality, notification, providing, offering, dissemination, replacement, sale and/or resale by the Released Parties of the Eligible Shoes; (3) any claims for rescission, restitution or unjust enrichment for all damages of any kind; (4) violations of any state's deceptive, unlawful and/or unfair business and/or trade practices, false, misleading or fraudulent advertising, consumer fraud and/or consumer protection statutes; (5) any violation of the Uniform Commercial Code, any breaches of express, implied and/or any other warranties, any similar federal, state or local statutes, codes; or (6) damages, costs, expenses, extra-contractual damages, compensatory damages, exemplary damages, special damages, penalties, punitive damages and/or damage multipliers, disgorgement, declaratory relief, expenses, interest, and/or attorneys' fees and costs.

  **C.**  Notwithstanding the language in this section and/or this Agreement, the members of the Class, other than Plaintiffs, are not releasing any claims of or relating to personal injury.

  **D.**  Plaintiff Grabowski represents and warrants that she is the sole and exclusive owner of all claims that she personally is releasing under this Agreement.

BLOOD HURST & O'REARDON, LLP

1    Plaintiff Grabowski further acknowledges that she has not assigned, pledged, or in any

2    manner whatsoever, sold, transferred, assigned or encumbered any right, title, interest

3    or claim arising out of or in any way whatsoever pertaining to the Action, and that

4    Plaintiff Grabowski is not aware of anyone other than herself claiming any interest, in

5    whole or in part, in the Action or in any benefits, proceeds or values under the Action

6    on her behalf.

7        **E.**     Without in any way limiting its scope, and, except to the extent otherwise

8    specified in this Agreement, this Release covers by example and without limitation, any

9    and all claims for attorneys' fees, costs, expert fees, or consultant fees, interest, or

10   litigation fees, costs or any other fees, costs, and/or disbursements incurred by

11   Plaintiffs' Counsel, or by Plaintiff Grabowski or the Class Members for which the

12   Released Parties may be liable.

13       **F.**     Plaintiff Grabowski expressly understands and acknowledges, and all

14   Class Members will be deemed by the Final Order and Final Judgment to acknowledge,

15   that certain principles of law, including, but not limited to, **Section 1542 of the Civil**

16   **Code of the State of California, provide that "a general release does not extend to**

17   **claims which the creditor does not know or suspect to exist in his or her favor at**

18   **the time of executing the release, which if known by him or her must have**

19   **materially affected his or her settlement with the debtor."**  To the extent that

20   anyone might argue that these principles of law are applicable, Plaintiff Grabowski

21   hereby agrees that the provisions of all such principles of law or similar federal or state

22   laws, rights, rules, or legal principles, to the extent they are found to be applicable

23   herein, are hereby knowingly and voluntarily waived, relinquished and released by

24   Plaintiff Grabowski and all Class Members.

25       **G.**     The Parties shall be deemed to have agreed that the Release set forth

26   herein will be and may be raised as a complete defense to and will preclude any action

27   or proceeding based on the claims released by and through this Agreement.

28

**H.**     Nothing in this Release shall preclude any action to enforce the terms of this Agreement, including participation in any of the processes detailed therein.

**I.**     Plaintiff Grabowski and Defendant hereby agree and acknowledge that the provisions of this Release together constitute an essential and material term of this Agreement and shall be included in any Final Order and Final Judgment entered by the Court.

## IX.    ATTORNEYS' FEES AND EXPENSES AND INDIVIDUAL PLAINTIFF AWARDS

**A.**     Subject to the provisions of this Section (Section IX of the Agreement), on behalf of Plaintiffs' Counsel, Class Counsel agrees to make, and Skechers agrees not to oppose, an application for an award of Attorneys' Fees and Expenses that will not exceed $5 million in attorneys' fees and expenses.  Class Counsel, in their sole discretion, shall allocate and distribute this award of Attorneys' Fees and Expenses among Plaintiffs' Counsel, subject to the provisions of Section IX.C. below.

**B.**     As of the date of execution of this Agreement, there remain pending six (6) additional putative class actions ("Later-Filed Actions") in various state and federal courts that are duplicative of the Action.  The Later-Filed Actions allege, among other claims, violations of state consumer fraud, consumer protection, or deceptive, unlawful and/or unfair business and/or trade practices statutes against Skechers concerning some or all of the Eligible Shoes:  *Stalker v. Skechers U.S.A., Inc.*, No. CV 10-05460 JAK (JEMx) (C.D. Cal. filed July 2, 2010); *Tomlinson v. Skechers U.S.A., Inc.*, No. CV 2011-121-7 (Ark. Cir. Ct. filed Jan. 13, 2011); *Lovston v. Skechers U.S.A., Inc.*, No. 4:11-CV-0460 DPM (Ark. Cir. Ct. filed May 13, 2011); *Hochberg v. Skechers U.S.A. Inc.*, No. CV11-5751 (E.D.N.Y. filed Nov. 23, 2011); *Loss v. Skechers U.S.A., Inc.*, No. 3:12-cv-78-H (W.D. Ky. filed Feb. 10. 2012); and *Boatright v. Skechers U.S.A., Inc.*, No. 3:12-CV-00087-CRS (W.D. Ky. filed Feb. 15, 2012).  Skechers, Plaintiffs' Counsel, and the Federal Trade Commission

1  acknowledge and agree that the Later-Filed Actions did not in any way contribute to

2  the resolution of the Action, generally, or this settlement, specifically.

3      **C.**      Nonetheless, solely to bring about the dismissal of the Later-Filed

4  Actions and not because any of these actions contributed in any way to the resolution

5  of this matter, Class Counsel, without obligation to counsel for plaintiffs in any of the

6  Later-Filed Actions, shall use reasonable efforts to seek prompt and final resolution

7  of the Later-Filed Actions.  To effectuate the resolution of the Later-Filed Actions,

8  Class Counsel is authorized to pay a portion of the Attorneys' Fees and Expenses

9  awarded by the Court pursuant to Section IX.A. to the counsel for the plaintiff in any

10  Later-Filed Action that is dismissed with prejudice within forty-five (45) days after

11  the date of entry of the Preliminary Approval Order in this Action.  The amount of

12  any such payment shall be determined by Class Counsel in their sole discretion,

13  including pursuant to any agreement reached between Class Counsel and counsel for

14  plaintiffs in the Later-Filed Actions.  If any further putative class actions are brought

15  that assert claims similar to those in the Action, counsel for plaintiffs in such further

16  putative class actions shall not be entitled to any portion of the Attorneys' Fees and

17  Expenses awarded by the Court.

18      **D.**      Neither the Class, Plaintiffs' Counsel, nor Skechers shall be obligated

19  to pay any attorneys' fees or expenses pursuant to this Agreement in connection with

20  any Later-Filed Action that is not dismissed with prejudice within forty-five (45) days

21  after the date of entry of the Preliminary Approval Order.

22      **E.**      The denial, downward modification, or failure to grant the request for

23  Attorneys' Fees and Expenses shall not constitute grounds for modification or

24  termination of this Agreement or the settlement proposed herein.

25      **F.**      The amounts awarded by the Court in Attorneys' Fees and Expenses

26  shall be the sole aggregate compensation paid by Skechers for Plaintiffs' Counsel

27  representing the Class and for any counsel for plaintiffs in any Later-Filed Actions.

28  Skechers shall not be liable for or obligated to pay any fees, expenses, costs, or

BLOOD HURST & O'REARDON, LLP

disbursements to, or incur any expense on behalf of, any person or entity, either directly or indirectly, in connection with this Action or any Later-Filed Actions, other than the amount or amounts expressly provided for in this Agreement or by agreement of the Parties.

**G.**     Skechers shall make an initial payment to Class Counsel of seven-tenths (7/10) of the amount of Attorneys' Fees and Expenses awarded by the Court ("Initial Payment"), up to a maximum of $3.5 million, within ten (10) calendar days after entry of the Court's order so awarding Attorneys' Fees and Expenses.  If the Final Order and Final Judgment (or the order awarding Attorneys' Fees and Expenses) is reversed, vacated, modified, and/or remanded for further proceedings or otherwise disposed of in any manner other than one resulting in an affirmance, then Plaintiffs' Counsel (or, as applicable, any and all successor(s) or assigns of their respective firms) shall, within ten (10) calendar days of such event, (i) repay to Skechers, as applicable, the full amount of the Initial Payment paid to them, or (ii) repay to Skechers the amount by which the award of Attorneys' Fees and Expenses has been reduced.  Plaintiffs' Counsel's firms (or, as applicable, any and all successor(s) or assigns of their respective firms) shall be jointly and severally liable for repayment to Skechers of the Initial Payment, and each firm shall execute a guarantee of repayment concurrently with this Agreement.

**H.**     Skechers shall make a final payment of the remaining three-tenths (3/10) of the Attorneys' Fees and Expenses awarded by the Court ("Final Payment"), up to a maximum of $1.5 million, to Class Counsel within ten (10) days after the Final Settlement Date.  Any payment to counsel for plaintiffs in a Later-Filed Action shall be paid by Class Counsel within thirty (30) days after the Final Settlement Date.

**I.**     Class Counsel may petition the Court for incentive awards of up to $2,500 for Plaintiff Grabowski and $2,500 for Plaintiff Morga.  The purpose of such awards shall be to compensate Plaintiff Grabowski and Plaintiff Morga for efforts and risks taken by them on behalf of the Class.  Skechers shall pay any incentive awards

made by the Court within thirty (30) days after the occurrence of the Final Settlement Date in accordance with the instructions provided by Class Counsel.

## X.   PRELIMINARY APPROVAL ORDER, FINAL ORDER, FINAL JUDGMENT AND RELATED ORDERS

**A.**      The Parties shall file with the Court, within fifteen (15) days after the execution of this Agreement, a motion for preliminary approval seeking entry of the Preliminary Approval Order.  The Preliminary Approval Order will be in the form of and containing content substantially similar to Exhibit 5.

**B.**      At the hearing on the motion for preliminary approval, the Parties shall ask the Court to set a date for the Fairness Hearing no earlier than 150 days after the Court grants the Preliminary Approval Order,

**C.**      Not later than forty-five (45) days before the Fairness Hearing, the Parties shall file a motion and all supporting papers seeking a Final Order and Final Judgment in the forms substantially similar to and containing content substantially similar to Exhibits 3 and 4, respectively.

## XI.   MODIFICATION OR TERMINATION OF THIS AGREEMENT

**A.**      The terms and provisions of this Agreement may be amended, modified, or expanded by written agreement of the Parties and approval of the Court; provided, however, that, after entry of the Final Order and Final Judgment, the Parties may by written agreement effect such amendments, modifications, or expansions of this Agreement and its implementing documents (including all exhibits hereto) without further notice to the Class or approval by the Court if such changes are consistent with the Court's Final Order and Final Judgment and do not limit the rights of Class Members under this Agreement.

**B.**      This Agreement shall terminate at the discretion of either Skechers or Plaintiff Grabowski, through Class Counsel, if: (1) the Court, or any appellate court(s), rejects, modifies, or denies approval of any portion of this Agreement that the

terminating party in its or her sole judgment and discretion reasonably determines is material, including, without limitation, the terms of relief, the findings, or conclusions of the Court, the provisions relating to notice, the definition of the Class, and/or the terms of the Release; or (2) the Court, or any appellate court(s), does not enter or completely affirm, or alters or expands, any portion of the Final Order and Judgment, or any of the Court's findings of fact or conclusions of law, that the terminating party in its or her sole judgment and discretion reasonably determines is material.  The terminating party must exercise the option to withdraw from and terminate this Agreement, as provided in this Section XI, by a signed writing served on the other Parties no later than 20 days after receiving notice of the event prompting the termination.  In the event that a terminating party exercises its option to withdraw from and terminate this Agreement, this Agreement and the Settlement proposed herein shall become null and void and the Parties will be returned to their respective positions existing immediately before the execution of this Agreement.

C. If an option to withdraw from and terminate this Agreement arises under Section XI.B above, neither Skechers nor Plaintiff Grabowski is required for any reason or under any circumstance to exercise that option and any exercise of that option shall be in good faith.

D. If this Agreement is terminated pursuant to Section XI.B, above, then:

1. this Agreement shall be null and void and shall have no force or effect, and no party to this Agreement shall be bound by any of its terms, except for the terms of Sections XI.D herein;

2. the Parties will petition to have any stay orders entered pursuant to this Agreement lifted;

3. all of its provisions, and all negotiations, statements, and proceedings relating to it shall be without prejudice to the rights of Skechers, Plaintiff Grabowski or any Class Member, all of whom shall be restored to their respective positions existing immediately before the execution of this Agreement, except that the

BLOOD HURST & O'REARDON, LLP

1  Parties shall cooperate in requesting that the Court set a new scheduling order such that

2  neither party's substantive or procedural rights is prejudiced by the attempted

3  Settlement;

4      **4.**    the Released Parties, as defined in Section II above, expressly and

5  affirmatively reserve all defenses, arguments, and motions as to all claims that have

6  been or might later be asserted in the Action, including, without limitation, the

7  argument that the Action may not be litigated as a class action;

8      **5.**    Plaintiff Grabowski and all other Class Members, on behalf of

9  themselves and their heirs, assigns, executors, administrators, predecessors, and

10 successors, expressly and affirmatively reserve and do not waive any motions as to, and

11 arguments in support of, all claims, causes of actions or remedies that have been or

12 might later be asserted in the Action including, without limitation, any argument

13 concerning class certification, consumer fraud, and damages;

14     **6.**    this Agreement, the fact of its having been made, the negotiations

15 leading to it, any discovery or action taken by a party or Class Member pursuant to this

16 Agreement, or any documents or communications pertaining to this Agreement shall

17 not be admissible or entered into evidence for any purpose whatsoever in the Action or

18 in any other proceeding, other than to enforce the terms of this Agreement;

19     **7.**    the parties stipulate that any Settlement-related order(s) or

20 judgment(s) entered in this Action after the date of execution of this Agreement shall

21 be deemed vacated and shall be without any force or effect;

22     **8.**    all costs incurred in connection with the Settlement, including, but

23 not limited to, notice, publication, and customer communications, (excluding Plaintiffs'

24 Counsel's costs and expenses incurred in connection with the litigation of the Action)

25 will be paid from the Escrowed Funds.  Neither Plaintiff Grabowski nor Class Counsel

26 shall be responsible for any of these costs or other Settlement-related costs; and

27     **9.**    notwithstanding the terms of this paragraph, if the Settlement is

28 not consummated, Plaintiffs' Counsel may include any time spent in settlement efforts

MASTER FILE No. 3:11-MD-2308-TBR
SETTLEMENT AGREEMENT

as part of any statutory fee petition filed at the conclusion of the case, and Skechers reserves the right to object to the reasonableness of such requested fees.

## XII.    GENERAL MATTERS AND RESERVATIONS

**A.**      The obligation of the Parties to conclude the proposed Settlement is and shall be contingent upon entry by the Court of the Final Order and Final Judgment approving the Settlement, from which the time to appeal has expired or which has remained unmodified after any appeal(s).

**B.**      This Agreement reflects, among other things, the compromise and settlement of disputed claims among the Parties hereto, and neither this Agreement nor the releases given herein, nor any consideration therefor, nor any actions taken to carry out this Agreement are intended to be, nor may they be deemed or construed to be, an admission or concession of liability, or the validity of any claim, or defense, or of any point of fact or law (including but not limited to matters respecting class certification) on the part of any party.  Skechers expressly denies the allegations of the Plaintiffs' complaints.  Neither this Agreement, nor the fact of settlement, nor the settlement proceedings, nor settlement negotiations, nor any related document, shall be used as an admission of any fault or omission by Skechers, or be offered or received in evidence as an admission, concession, presumption, or inference of any wrongdoing by Skechers in any proceeding, other than such proceedings as may be necessary to consummate, interpret, or enforce this Agreement.

**C.**      The Parties and their counsel agree to keep the existence and contents of this Agreement confidential until the date on which the Agreement is filed with the Court, provided, however, that this section shall not prevent Skechers from disclosing such information, prior to the date on which the Agreement is filed, to state and federal agencies, independent accountants, actuaries, advisors, financial analysts, insurers or attorneys, nor shall it prevent the Parties and their counsel from disclosing such information to persons or entities (such as experts, courts, co-counsel, and/or

administrators) to whom the Parties agree disclosure must be made in order to effectuate the terms and conditions of this Agreement; provided further, that Skechers may disclose publicly the terms of the Agreement that it deems necessary to meet its regulatory obligations or fiduciary duties.

**D.**    Plaintiff Grabowski and Plaintiffs' Counsel agree that the confidential information made available to them solely through the settlement process was made available, as agreed to, on the condition that neither Plaintiff Grabowski nor her counsel may disclose it to third parties (other than experts or consultants retained by Plaintiff Grabowski in connection with this case); that it not be the subject of public comment; that it not be used by Plaintiff Grabowski or Plaintiffs' Counsel in any way in this litigation should the Settlement not be achieved, and that it is to be returned if a Settlement is not concluded; provided, however, that nothing contained herein shall prohibit Plaintiff Grabowski from seeking such information through formal discovery if not previously requested through formal discovery or from referring to the existence of such information in connection with the Settlement of this litigation.

**E.**    All information marked as "Confidential" provided by Skechers to Plaintiffs, Plaintiffs' Counsel, any individual Class Member, counsel for any individual Class Member, and/or administrators, pursuant to the implementation of this Agreements, constitutes trade secrets and highly confidential and proprietary business information and shall be deemed "Confidential," pursuant to the protective order that will be entered in the Action, and shall be the subject to all the provisions thereof.  Any materials inadvertently produced shall, upon Skechers' request, be promptly returned to Skechers' Counsel, and there shall be no implied or express waiver of any privilege, right and defense.

**F.**    Within one hundred and eighty (180) days after the Final Settlement Date (unless the time is extended by agreement of the Parties), Plaintiffs' Counsel, and any expert or other consultant employed by them in such capacity or any other individual with access to documents provided by Skechers to Plaintiffs' Counsel, shall either: (i)

BLOOD HURST & O'REARDON, LLP

return to Skechers' Counsel, all such documents and materials (and all copies of which documents in whatever form made or maintained) produced by Skechers in the Action and any and all handwritten notes summarizing, describing, or referring to such documents; or (ii) certify to Skechers' Counsel that all such documents and materials (and all copies of such documents in whatever form made or maintained) produced by Skechers in the Action any and all handwritten notes summarizing, describing, or referring to such documents have been destroyed, provided, however, that this section shall not apply to any documents made part of the record in connection with a Claim, nor to any documents made part of a Court filing, nor to Plaintiffs' Counsel's work product.  Skechers' Counsel agrees to hold all documents returned by Plaintiffs' Counsel, and any expert or other consultant or any other individual employed by Plaintiffs' Counsel in such capacity with access to documents provided by Skechers until one year after the distribution of the Escrowed Funds to Class Members who submitted valid Claim Forms.  One (1) year after the distribution of the Escrowed Funds to Class Members who submitted acceptable Claim Forms, the Class Action Settlement Administrator shall return all documents and materials to Skechers and/or Class Counsel that produced the documents and materials, except that it shall destroy any and all Claim Forms, including any and all information and/or documentation submitted by Class Members.

    **G.**    Skechers' execution of this Agreement shall not be construed to release — and Skechers expressly does not intend to release — any claim Skechers may have or make against any insurer for any cost or expense incurred in connection with this Settlement, including, without limitation, for attorneys' fees and costs.

    **H.**    Class Counsel represent that: (1) they are authorized by Plaintiff Grabowski to enter into this Agreement on behalf of Plaintiff Grabowski, their respective present or past law firms and any other attorneys who have represented or who now represent Plaintiff Grabowski in this Action with respect to the claims in this Action; and (2) they are seeking to protect the interests of the Class.

BLOOD HURST & O'REARDON, LLP

BLOOD HURST & O'REARDON, LLP

I.      Plaintiff Grabowski represents and certifies that: (1) she has agreed to serve as representative of the Class; (2) she is willing, able, and ready to perform all of the duties and obligations of representatives of the Class; (3) she has read the operative complaint, or has had the contents of such pleadings described to her; (4) she is familiar with the results of the fact-finding undertaken by Class Counsel; (5) she has read this Agreement or has received a detailed description of it from Class Counsel and she has agreed to its terms; (6) she has consulted with Class Counsel about the Action and this Agreement and the obligations imposed on representatives of the Class; and (7) she has authorized Class Counsel to execute this Agreement on her behalf; and (8) she shall remain and serve as representative of the Class until the terms of the Agreement are effectuated, this Agreement is terminated in accordance with its terms, or the Court at any time determines that said Plaintiff cannot represent the Class.

J.      Skechers represents and warrants that the individual(s) executing this Agreement is authorized to enter into this Agreement on behalf of Skechers.

K.      This Agreement, complete with its exhibits, sets forth the sole and entire agreement among the Parties with respect to its subject matter, and it may not be altered, amended, or modified except by written instrument executed by Class Counsel and Skechers' Counsel.  The Parties expressly acknowledge that no other agreements, arrangements, or understandings not expressed in this Agreement exist among or between them and that in deciding to enter into this Agreement, they rely solely upon their judgment and knowledge.  This Agreement supersedes any prior agreements, understandings, or undertakings (written or oral) by and between the Parties regarding the subject matter of this Agreement.

L.      This Agreement and any amendments thereto shall be governed by and interpreted according to the law of the State of California, notwithstanding its conflict of laws provisions.

M.      Any disagreement and/or action to enforce this Agreement shall be commenced and maintained only in the Court in which this Action is pending.

N.      Whenever this Agreement requires or contemplates that one of the Parties shall or may give notice to the other, notice shall be provided by e-mail and/or next-day (excluding Saturdays, Sundays and Legal Holidays) express delivery service as follows:

      **1.**      If to Skechers, then to:

        Daniel M. Petrocelli
        Jeffrey A. Barker
        O'Melveny & Myers LLP
        1999 Avenue of the Stars, 7th Floor
        Los Angeles, California 90067
        Tel. 310-553-6700
        Fax. 310-246-6779
        Email: dpetrocelli@omm.com
        jbarker@omm.com

        Jon Kardassakis
        Lewis Brisbois Bisgaard & Smith LLP
        221 North Figueroa Street, Suite 1200
        Los Angeles, CA 90012
        Tel. 213-250-1800
        Fax. 213-250-7900
        Email: kardassakis@lbbslaw.com

      **2.**      If to Plaintiff Grabowski, then to:

        Timothy G. Blood
        Blood Hurst & O'Reardon LLP
        701 B Street, Suite 1700
        San Diego, California 92101
        Tel. 619-338-1100
        Fax. 619-338-1101
        Email: tblood@bholaw.com

        Janine L. Pollack
        Milberg LLP
        One Penn Plaza
        New York, NY 10119
        Tel. 212-946-9376
        Fax. 212-273-4388
        Email: jpollack@milberg.com

O.      All time periods set forth herein shall be computed in calendar days unless otherwise expressly provided.  In computing any period of time prescribed or allowed by this Agreement or by order of the Court, the day of the act, event, or default from which the designated period of time begins to run shall not be included.  The last

BLOOD HURST & O'REARDON, LLP

00045019

BLOOD HURST & O'REARDON, LLP

1   day of the period so computed shall be included, unless it is a Saturday, a Sunday or a

2   Legal Holiday (as defined in Fed. R. Civ. P. 6(a)(6)), or, when the act to be done is the

3   filing of a paper in court, a day on which weather or other conditions have made the

4   office of the clerk of the court inaccessible, in which event the period shall run until the

5   end of the next day that is not one of the aforementioned days.

6        **P.**     The Parties reserve the right, subject to the Court's approval, to agree to

7   any reasonable extensions of time that might be necessary to carry out any of the

8   provisions of this Agreement.

9        **Q.**     The Class, Plaintiff Grabowski, Class Counsel, Skechers or Skechers'

10   Counsel shall not be deemed to be the drafter of this Agreement or of any particular

11   provision, nor shall they argue that any particular provision should be construed against

12   its drafter or otherwise resort to the *contra proferentem* canon of construction.  All

13   Parties agree that this Agreement was drafted by counsel for the Parties during

14   extensive arm's length negotiations.  No parol or other evidence may be offered to

15   explain, construe, contradict, or clarify its terms, the intent of the Parties or their

16   counsel, or the circumstances under which this Agreement was made or executed.

17        **R.**     The Parties expressly acknowledge and agree that this Agreement and its

18   exhibits, along with all related drafts, motions, pleadings, conversations, negotiations,

19   and correspondence, constitute an offer of compromise and a compromise within the

20   meaning of Federal Rule of Evidence 408 and any equivalent rule of evidence in any

21   state.  In no event shall this Agreement, any of its provisions or any negotiations,

22   statements or court proceedings relating to its provisions in any way be construed as,

23   offered as, received as, used as, or deemed to be evidence of any kind in the Action,

24   any other action, or in any judicial, administrative, regulatory or other proceeding,

25   except in a proceeding to enforce this Agreement or the rights of the Parties or their

26   counsel.  Without limiting the foregoing, neither this Agreement nor any related

27   negotiations, statements, or court proceedings shall be construed as, offered as,

28   received as, used as or deemed to be evidence or an admission or concession of any

liability or wrongdoing whatsoever on the part of any person or entity, including, but not limited to, the Released Parties, Plaintiff Grabowski, or the Class or as a waiver by the Released Parties, Plaintiff Grabowski or the Class of any applicable privileges, claims or defenses.

**S.**   Plaintiff Grabowski expressly affirms that the allegations contained in the complaint were made in good faith and have a basis in fact, but considers it desirable for the Action to be settled and dismissed because of the substantial benefits that the proposed Settlement will provide to Class Members.

**T.**   The Parties, their successors and assigns, and their counsel undertake to implement the terms of this Agreement in good faith, and to use good faith in resolving any disputes that may arise in the implementation of the terms of this Agreement.

**U.**   The waiver by one party of any breach of this Agreement by another party shall not be deemed a waiver of any prior or subsequent breach of this Agreement.

**V.**   If one party to this Agreement considers another party to be in breach of its obligations under this Agreement, that party must provide the breaching party with written notice of the alleged breach and provide a reasonable opportunity to cure the breach before taking any action to enforce any rights under this Agreement.

**W.**   The Parties, their successors and assigns, and their counsel agree to cooperate fully with one another in seeking Court approval of this Agreement and to

1   use their best efforts to effect the prompt consummation of this Agreement and the

2   proposed Settlement.

3       **X.**    This Agreement may be signed with a facsimile signature and in

4   counterparts, each of which shall constitute a duplicate original.

5

6       Agreed to on the date indicated below.

7   APPROVED AND AGREED TO BY THE PLAINTIFFS

8

9   BY_____    DATE___5-15-12_____

10      TAMARA GRABOWSKI

11  BY_____    DATE_____

12      VENUS MORGA

13

14

15  APPROVED AND AGREED TO BY CLASS COUNSEL

16

17  BY_____    DATE_____

    TIMOTHY G. BLOOD

18      BLOOD HURST  & O'REARDON LLP

19

20

21  BY_____    DATE_____

    JANINE L. POLLACK

22      MILBERG LLP

23

24  APPROVED AND AGREED TO BY AND ON BEHALF OF
    SKECHERS U.S.A., INC.

25

26  BY_____    DATE_____

    Name:

27      Title:

28

BLOOD HURST & O'REARDON, LLP

WINE COUNTRY ST2       Fax 2093343760          May 15 2012 07:22pm P001/001

1   use their best efforts to effect the prompt consummation of this Agreement and the

2   proposed Settlement.

3       **X.**     This Agreement may be signed with a facsimile signature and in

4   counterparts, each of which shall constitute a duplicate original.

5

6       Agreed to on the date indicated below.

7   APPROVED AND AGREED TO BY THE PLAINTIFFS

8

9   BY_____        DATE_____
         TAMARA GRABOWSKI

10

11  BY_____        DATE  05/15/12
         VENUS MORGA

12

13

14

15  APPROVED AND AGREED TO BY CLASS COUNSEL

16

17  BY_____        DATE_____
         TIMOTHY G. BLOOD
18       BLOOD HURST  & O'REARDON LLP

19

20

21  BY_____        DATE_____
         JANINE L. POLLACK
22       MILBERG LLP

23

24  APPROVED AND AGREED TO BY AND ON BEHALF OF
     SKECHERS U.S.A., INC.

25

26  BY_____        DATE_____
     Name:
27  Title:

28

{00044980.VI}                    37              **Case No.: 3:10-CV-01300-JM(MDD)**
                          SETTLEMENT AGREEMENT

BLOOD HURST & O'REARDON, LLP

1   use their best efforts to effect the prompt consummation of this Agreement and the

2   proposed Settlement.

3       **X.**    This Agreement may be signed with a facsimile signature and in

4   counterparts, each of which shall constitute a duplicate original.

5

6       Agreed to on the date indicated below.

7   APPROVED AND AGREED TO BY THE PLAINTIFFS

8

9   BY_____      DATE_____
     TAMARA GRABOWSKI

10

11   BY_____      DATE_____

12        VENUS MORGA

13

14

15   APPROVED AND AGREED TO BY CLASS COUNSEL

16

17   BY_____      DATE *May 15, 2012*
     TIMOTHY G. BLOOD

18        BLOOD HURST  & O'REARDON LLP

19

20

21   BY_____      DATE_____
     JANINE L. POLLACK

22        MILBERG LLP

23

24   APPROVED AND AGREED TO BY AND ON BEHALF OF
SKECHERS U.S.A., INC.

25

26   BY_____      DATE_____
Name:

27   Title:

28

use their best efforts to effect the prompt consummation of this Agreement and the proposed Settlement.

     **X.**    This Agreement may be signed with a facsimile signature and in counterparts, each of which shall constitute a duplicate original.

     Agreed to on the date indicated below.

**APPROVED AND AGREED TO BY THE PLAINTIFFS**

BY_____    DATE_____
    TAMARA GRABOWSKI

BY_____    DATE_____
    VENUS MORGA

**APPROVED AND AGREED TO BY CLASS COUNSEL**

BY_____    DATE_____
    TIMOTHY G. BLOOD
    BLOOD HURST  & O'REARDON LLP

BY _*Janine L. Pollack*_    DATE _May 15, 2012_
    JANINE L. POLLACK
    MILBERG LLP

**APPROVED AND AGREED TO BY AND ON BEHALF OF**
**SKECHERS U.S.A., INC.**

BY_____    DATE_____
Name:
Title:

BLOOD HURST & O'REARDON, LLP

1  use their best efforts to effect the prompt consummation of this Agreement and the

2  proposed Settlement.

3        X.      This Agreement may be signed with a facsimile signature and in

4  counterparts, each of which shall constitute a duplicate original.

5

6        Agreed to on the date indicated below.

7  APPROVED AND AGREED TO BY THE PLAINTIFFS

8

9  BY_____          DATE_____
10        TAMARA GRABOWSKI

11

12 BY_____          DATE_____
13        VENUS MORGA

14

15 APPROVED AND AGREED TO BY CLASS COUNSEL

16

17 BY_____          DATE_____
18        TIMOTHY G. BLOOD
          BLOOD HURST  & O'REARDON LLP
19

20

21 BY_____          DATE_____
22        JANINE L. POLLACK
          MILBERG LLP
23

24 APPROVED AND AGREED TO BY AND ON BEHALF OF
   SKECHERS U.S.A., INC.
25

26 BY_____          DATE_____May 15, 2012____
27 Name:  David  Weinberg
   Title:  Chief  Operating  Officer
28

00045019

BLOOD HURST & O'REARDON, LLP

1   APPROVED AND AGREED TO BY DEFENDANT'S COUNSEL

2

3   BY _____ DATE May 15, 2012

4   JEFFREY A. BARKER
    O'MELVENY & MYERS, LLP

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BLOOD HURST & O'REARDON, LLP

00045019

MASTER FILE No. 3:11-MD-2308-TBR

SETTLEMENT AGREEMENT