# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# LOUISVILLE DIVISION

**IN RE: SKECHERS TONING SHOE**
**PRODUCTS LIABILITY LITIGATION**

THIS DOCUMENT RELATES TO:
Grabowski v. Skechers U.S.A. Inc., W.D.
Ky., 3:12-CV-00204; Morga v. Skechers U.S.A. Inc., W.D.
Ky., 3:12-CV-00205; Hochberg v. Skechers U.S.A. Inc., W.D.
Ky., 3:12-CV-00370; Loss v. Skechers U.S.A. Inc., W.D.
Ky., 3:12-CV-00078; Stalker v. Skechers U.S.A. Inc., W.D.
Ky., 3:12-CV-00263

**Master File No. 3:11-MD-2308-TBR**
**MDL No. 2308**

**THOMAS B. RUSSELL**
**U.S. DISTRICT JUDGE**

**************************************************MEMORANDUM OPINION*****

**********This matter comes before the Court upon the *Grabowski* Plaintiffs' Motion for Final

Approval of Class Action Settlement and Attorneys' Fees and Expenses.  (*Grabowski* Mot.,

Docket Number ("DN") 403.)[1]  The various other plaintiffs have filed motions for attorneys'

fees.  (*Stalker* Mot., DN 399; *Hochberg* Mot., DN 401; and *Loss* Mot., DN 404.)  Appropriate

responses and replies have been filed for each motion.  The Court also held a final fairness

hearing on this matter on March 19, 2013, during which it heard arguments on all motions.

Accordingly, this matter is now ripe for adjudication.  For all of the following reasons,

*Grabowski*'s motion for Final Approval of Class Action Settlement is **GRANTED**.  The parties'

motions for attorneys' fees and expenses are granted in the manner described herein.

## BACKGROUND

On May 16, 2012, *Grabowski* moved the Court for preliminary approval of a class-action

settlement on the consumer fraud and economic injury claims asserted on behalf of the putative

nationwide class.  The motion requested class certification, preliminary approval of the

settlement and notice plan, and the setting of a final fairness hearing.  Only *Stalker* objected to

the motion for preliminary approval, and even then, the objection did not address the underlying

---

[1] In a memorandum opinion and order of August 13, 2012, the Court designated Plaintiff Grabowski as the
Representative Plaintiff of the conditionally certified class and appointed her counsel as Class Counsel.  (Mem. Op.
& Order, DN 148, p. 24.)  In light of the various competing plaintiffs and for the sake of clarity, however, the Court
refers to the various plaintiffs, including the Representative Plaintiff, by their case names, *i.e.*, *Grabowski*, *Morga*,
*Stalker*, *Hochberg*, and *Loss*.

substance of the settlement. Rather, *Stalker* objected to the attorneys' fees provision in the proposed settlement. In light of *Stalker*'s objection, *Grabowski* amended the proposed settlement agreement by removing the controversial attorneys' fees provision. The Court held a preliminary fairness hearing on the proposed settlement on July 24, 2012. After reviewing and considering the motion for preliminary approval, *Stalker*'s objections, the subsequent amendment, and the arguments presented at the preliminary fairness hearing, the Court preliminarily approved the settlement agreement. (*See* Mem. Op. & Order of Aug. 13, 2012, DN 148.) In doing so, the Court certified the settlement class, authorized the proposed class-notice program, appointed counsel for *Grabowski* as Class Counsel, and named representative plaintiffs.

*Grabowski* now moves for final approval of the class-action settlement and also seeks attorneys' fees, costs, expenses, and incentive awards for the representative plaintiffs. The Court held a final fairness hearing on March 19, 2013, in which it invited all potentially interested parties to comment or object to the settlement. Of particular note, none of the parties appearing before the Court (*i.e.*, *Stalker*, *Hochberg*, and *Loss*) objected to the underlying terms of the settlement. Rather, they contested the apportionment of attorneys' fees. Although none personally appeared at the fairness hearing, the Court also considered the eleven written objections submitted by individuals. The Court is now prepared to issue its final decision on the class-action settlement in this case.

## DISCUSSION

### I.     The Class Received Notice of the Proposed Settlement

Under Federal Rule of Civil Procedure 23(e), a class action may only settle with court approval. In the process of approving a class settlement, a court "must direct notice in a

reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1).  In its motion for preliminary approval, *Grabowski* set forth a plan for notifying class members of the settlement's terms.  In their motion for final approval, at the final fairness hearing, and in subsequent filings requested by the Court, *Grabowski* reported on the nature, success, and expense of the notice program.  The settlement documents, including a description of the settlement and a settlement claim form, were made available to the class via a website, and various methods, including a toll-free telephone number, were established to address class members' questions concerning the settlement.

As reported at the fairness hearing, *Grabowski* sent direct mailings of the class notice to more than 250,000 potential class members for whom it had physical addresses.  In addition, *Grabowski* worked with The Garden City Group, a company specializing in class-action administration, to develop a notice program that would reach class members through traditional print media and various electronic means, including Internet-based advertising.  According to The Garden City Group, the notice program exceeded "original projections by reaching 89 percent of Class Members, who are *Women 18 to 44*, and 84 percent of *All Adults 18 to 44 years of age*, on average 5 times; delivering over 732,000,000 impressions, or opportunities to see the notice through traditional media, news articles, online advertising, mobile advertising and social media and blogs."  (Decl. Jeanne C. Finegan, DN 403-8, ¶ 10.)  As of April 18, 2013, more than 520,000 claims for relief had been submitted by class members.  Based on the record, the Court finds that the notice program was adequate and consistent with Federal Rule of Civil Procedure 23 and the standards of due process.

## II.    Final Approval of the Settlement

In addition to notice, a court may only approve a class-action settlement "after a hearing

and on finding that [the settlement] is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). The Court next considers whether the proposed settlement complies with the requirements of Rule 23.

### A.  Terms of the Settlement

The settlement provides monetary and injunctive relief to class members.  Pursuant to the agreement, Skechers has established a $40 million, non-reversionary fund for the payment of class claims.  Two factors determine the amount class members will recover from the settlement fund.  First, benefit amounts are differentiated based on the type of Skechers Toning Shoe claimants purchased.  For example, claimants who purchased "Shape-Ups" will receive a larger payment than those who purchased "Podded Sole Shoes" because Shape-Ups were a more expensive product.  Second, disbursements from the settlement fund will be paid on an "Initial" and "Maximum" basis.  The "Initial Amount" of the cash disbursement is calculated so as to exceed class members' likely alternative measure of damages - the difference between the purchase price for the product as represented and the value of the product received.  The "Maximum Amount" is calculated to fully compensate class members for the purchase price of their Skechers Toning Shoes.  The maximum amount is double the initial amount and will only become available to claimants if, after the processing of all claims, settlement funds remain available.  Based on the amount of funds still available and on the number of claimants, the "Initial Amount" will then be increased on a pro-rata basis until the "Maximum Amount" is paid to claimants.  It should be noted that the initial amount of the payment may be reduced on a pro-rata basis if there are more claimants than initially expected.  At the final fairness hearing *Grabowski* represented to the Court that pro-rata reduction is a possible because of the large number of claims already received.  In the unlikely event that any amount of the $40 million

fund is not consumed by the settlement, the remaining balance will be paid to the Federal Trade Commission and will not revert to Skechers.  The following table displays the disbursement amounts available to class members who timely submit their claims:

| Shoes | Initial Amount | Maximum Amount |
|-------|----------------|----------------|
| Shape-Ups | $40.00 | $80.00 |
| Podded Sole Shoes | $27.00 | $54.00 |
| Tone-Ups (Non-Podded Sole) | $20.00 | $40.00 |
| Resistance Runner | $42.00 | $84.00 |

In addition to monetary relief, the settlement provides class members with injunctive relief.  Working in conjunction with the Federal Trade Commission, Skechers has agreed to make significant changes to the manner in which it markets, advertises, and labels Skechers Toning Shoes.  Among other things, Skechers will no longer make any claim that the toning shoes provide certain health benefits unless supported by scientific evidence substantiating those claims.

### B.  Standard for Settlement Approval

As discussed above, a court may only approve class-action settlements that are "fair, reasonable, and adequate."  Fed. R. Civ. Pro. 23(e)(2).  In making this determination, the Sixth Circuit Court of Appeals had held that courts should be guided by the following seven factors:

(1) the risk of fraud or collusion;
(2) the complexity, expense and likely duration of the litigation;
(3) the amount of discovery engaged in by the parties;
 (4) the likelihood of success on the merits;
 (5) the opinions of class counsel and class representatives;
 (6) the reaction of absent class members; and
 (7) the public interest.

*Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. v. Gen. Motors Corp.*,

497 F.3d 615, 631 (6th Cir. 2007) ("*UAW*") (citations omitted).   No one of these factors is dispositive.   Rather, all are to be weighed and considered in light of the particular demands of the case.   *See, e.g.*, *Grenada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205-06 (6th Cir. 1992). Federal policy favors class action settlement.   *UAW*, 497 F.3d at 632.   In fact, "[o]nce preliminary approval has been granted, a class action settlement is presumptively reasonable, and an objecting class member must overcome a heavy burden to prove that the settlement is unreasonable."   *Levell v. Monsanto Research Corp.*, 191 F.R.D. 543, 550 (S.D. Ohio 2000) (citing *Williams v. Vukovich*, 720 F.2d 909, 921 (6th Cir. 1983); *Bronson v. Bd. of Educ. of City Sch. Dist. of Cincinnati*, 604 F. Supp. 68, 71 (S.D. Ohio 1984)).

### C.  Nature of the Objections to the Settlement

As discussed above, *Stalker*, *Hochberg*, and *Loss* – plaintiffs who filed nationwide class actions similar to *Grabowski* – have not objected to the overall terms of the proposed settlement. At the final fairness hearing they agreed that the terms of the settlement are fair, reasonable, and adequate, and provide substantial relief to class members.   Although the main litigants in this action have not objected to the terms of the proposed settlement, the Court received at least eleven written objections from individuals.   The Court pauses to describe these objections prior to considering whether the settlement should be approved.

The individual, written objections fall into three categories.   First, two objectors claim that they should be reimbursed the *full purchase price* for their shoes, rather than the partial payout proposed in the settlement.   Second, eight other "objectors" filed documents with the Court expressing satisfaction with their purchases.   To the extent that they object to the settlement, they do not object on their own behalf but rather argue that Skechers should not enter into the settlement because it provided a valuable product that performed as promised.   Third,

one person objects on belief that the settlement would bar her from seeking compensation for personal injuries.

The Court finds these objections to be without merit.  For the first category, reimbursement of the full price of the shoes would preclude payment to some class members because the settlement fund would be consumed more quickly.  Furthermore, reimbursement of the full price would overcompensate the class members.  As represented by *Grabowski* and Skechers, the monetary relief available under the settlement is calculated to compensate the class members for the difference between the shoe they bought and the shoe actually received.  Reimbursement of the full purchase price would overcompensate class members.  The second category cannot truly be considered objections because the objectors express satisfaction with the product received and do not seeks compensation or other relief.  The final category is also without merit because the proposed settlement in no way waives, infringes on, or otherwise affects a class member's right to maintain personal injury claims against Skechers.  The proposed settlement only reaches the consumer fraud and economic injury claims.

Overall, the Court finds that the written objections received from individuals are without merit and in no way bar or preclude the approval of the settlement.

**D.  Consideration of Settlement Factors**

Having found the written objections meritless, the Court next considers the seven factors set forth in *UAW*, which guide the inquiry into whether the proposed settlement is fair, reasonable, and adequate.

*1.  The Risk of Fraud or Collusion*

"'Courts presume the absence of fraud or collusion in class action settlements unless there is evidence to the contrary.'"  *Thacker v. Chesapeake Appalachia, L.L.C.*, 695 F. Supp. 2d

521, 531 (E.D. Ky. 2010) (quoting *Leonhardt v. ArvinMeritor, Inc.*, 581 F. Supp. 2d 818, 838

(E.D. Mich. 2008)).   The Court addressed the risk of fraud or collusion when preliminarily

approving the settlement, stating:

> The Settling Parties have demonstrated to the Court that the proposed
> settlement was agreed upon after arm's length negotiations and a sufficient
> exchange of discovery material, including documents and witnesses.  Evidence
> shows that though the settlement agreement was finally agreed upon in May 2012,
> negotiations began in December 2010 with the parties reaching agreement on
> some substantive issues as early as March 2011.  From March 2011 through
> November 2011, the Settling Parties exchanged discovery materials that allowed
> Grabowski to develop her claims and value her case.  By November 2011, the
> framework of the proposed settlement agreement was agreed upon, including the
> dollar amount of class relief.  Finally from November 2011 through May 2012,
> the Settling Parties completed settlement negotiations, drafted the specific terms
> of the settlement agreement, and made preparation for the administration of the
> settlement program, including class notification and electronic claims processing.
> No party has objected to the settlement agreement claiming that it was not
> properly negotiated or is the result of collusive practice.  The history of this
> litigation shows that the Settling Parties have produced a fair settlement that was
> negotiated at arm's length by equal parties and that it was not tainted by any form
> collusion.

(Mem. Op. & Order, DN 148, p. 16.)

Since preliminary approval, no party has alleged that the settlement is the product of

fraud or collusion and there is no evidence in the record to indicate such.  To the contrary,

evidence shows that the settlement was the product of arm's-length, good-faith negotiations

between *Grabowski* and Skechers.  Accordingly, the Court finds that the proposed settlement

does not suffer from and is not otherwise tainted by fraud or collusion.  The absence of fraud or

collusion supports approval of the settlement.

### 2.   *The Complexity, Expense, and Likely Duration of the Litigation*

"In evaluating a proposed class settlement, the Court must also weigh the risks, expense

and delay the plaintiffs would face if they continued to prosecute the litigation through trial and

appeal." *Thacker*, 695 F. Supp. 2d at 531 (citing *In re Cardizem CD Antitrust Litig.*, 218 F.R.D.

508, 523 (E.D. Mich. 2003)).  The Court weighs these factors against the recovery provided by the settlement.  *In re Cardizem*, 218 F.R.D. at 523.

In the present action the class claims that Skechers defrauded it by selling and marketing athletic shoes that could not confer the health and other benefits promised.  By entering into this settlement, Skechers has not admitted to any wrongdoing or fraudulent actions.  Accordingly, to prevail on the consumer fraud claims, the class would have to prove that the shoes could not confer the benefits promised.  This would undoubtedly result in a host of expert witnesses from each side, increasing the complexity, expense, and duration of the litigation.  The class faces the substantial risk that they would not be able to prove their claims, making settlement the most viable option for resolution of their perceived injuries.

Other considerations also weigh in favor of settlement under this factor: the large class size and potential class certification problems, the likelihood of appeals, and the delay that would assuredly accompany the significant period of discovery and pretrial motion practice. "Proceeding without a settlement in this action [would] thus expose[] the Class to risk in connection with establishing the factual bases to support some of the Class's legal theories, in proving damages, and in collecting any amount that is ultimately awarded."  *Thacker*, 695 F. Supp. 2d at 531.  For all of these reasons, the Court finds that this factor weighs in favor of settlement.

3.  *The Amount of Discovery Engaged in by the Parties*

Beginning in November of 2010, *Grabowski* and Skechers began conducting discovery regarding the class claims.  This discovery included Rule 26 initial disclosures and an agreement on a joint discovery plan.  In December 2010, *Grabowski* served written discovery on Skechers and also developed a protocol for conducting electronic discovery.  During this period the parties

also worked toward an agreement on a protective order.  Later, the parties began a series of settlement discussions involving *Grabowski*, Skechers, the Federal Trade Commission, and, to some extent, state Attorneys General.  In the course of settlement discussions, Skechers produced written and electronically stored documents and also made key personnel, like the designers of the toning shoes, available for interviews.  Skechers eventually produced over 13.5 gigabytes of data, totaling approximately 6,574 documents or about 24,500 pages.  (Aff. Timothy Blood, DN 403-2, ¶ 21.)

The discovery conducted by *Grabowski* and Skechers has been extensive in this case. This allowed both sides to reasonably and clearly evaluate the risks and merits of their cases and to produce a settlement that appropriately valued the class's claims.  This discovery helped the parties value the claims and agree upon a compensation award that would appropriately ameliorate the class's perceived injuries.  The amount of pre-settlement and pretrial discovery conducted in this case weighs in favor of approving the settlement.

### 4.   *The Likelihood of Success on the Merits*

In deciding whether the settlement should be approved because it is fair, reasonable, and adequate, the Court must also consider the likelihood the class would succeed on the merits of their claims.  As the Sixth Circuit notes:

> The fairness of each settlement turns in large part on the bona fides of the parties' legal dispute.  Although this inquiry understandably does not require us to "decide the merits of the case or resolve unsettled legal questions," we cannot "judge the fairness of a proposed compromise" without "weighing the plaintiff's likelihood of success on the merits against the amount and form of the relief offered in the settlement."

*UAW*, 497 F.3d at 631 (quoting *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981)).  If taken to trial, the class would have to overcome at least two substantial hurdles prior to recovery: proof of causation and fraudulent intent.  On the issue of causation, the class would have to

10

prove that the shoes did not and could not confer the benefits as marketed by Skechers.  As discussed above, this would require extensive discovery and multiple expert witnesses, and even with this evidence, success would not be guaranteed.  Additionally, *Grabowski* claims that Skechers defrauded consumers, and, even if the class could show that the shoes were incapable of conferring the benefit promised, it would still be required to prove that Skechers intended to defraud consumers.  Accordingly, likelihood of success on proof of causation and intent weighs in favor of settlement.

5. *The Opinions of Class Counsel and Class Representatives*

"In deciding whether a proposed settlement warrants approval, the informed and reasoned judgment of plaintiffs' counsel and their weighing of the relative risks and benefits of protracted litigation are entitled to great deference." *Thacker*, 695 F. Supp. 2d at 532 (citing *UAW v. Ford Motor Co.*, No. 07-CV-14845, 2008 WL 4104329, at *26 (E.D. Mich. Aug. 29, 2008)).  Class Counsel appointed by the Court in the preliminary approval order are experienced in the area of class action and previously brought and settled similar suits against other athletic shoe makers, including Reebok.  The present case is an extension of their previous experience, and it is abundantly clear that they have diligently researched the legal and factual issues, conducted informed and careful discovery to support their claims, and have engaged in reasoned and arm's-length negotiations with Skechers in order to produce a settlement that confers a substantial benefit on the class.

Class Counsel have also stated that they believe the settlement provides substantial relief and benefits to the settlement class in light of the risks that would arise from continuing the litigation.  Additionally, the settlement is endorsed by the Representative Plaintiffs.  The Court finds that this factor weighs in favor of granting approval to the settlement.

*6.   The Reaction of Absent Class Members*

"A certain number of . . . objections [and opt-outs] are to be expected in a class action . . . . If only a small number are received, the fact can be viewed as indicative of the adequacy of the settlement."   *In re Cardizem,* 218 F.R.D. at 527.   "A court should not withhold approval of a settlement merely because some class members object." *Leonhardt*, 581 F. Supp. 2d at 840.

As detailed above, the Court has only received eleven written objection to the proposed settlement.  Notably, only two of those actually address the substance of the settlement's terms. Additionally, none of the plaintiffs in *Stalker*, *Hochberg*, or *Loss* – the other nationwide class actions – have objected to or otherwise opted out of the settlement.  Based on this evidence, the Court concludes that the overwhelming majority of the potential class members have no objection to the proposed settlement, and this weighs in favor of settlement.

The Court has also been notified that approximately 1,072 potential class members have opted-out of the settlement.  While this number is not insignificant, it is miniscule when compared to the number of claims received.  At the fairness hearing, Class Counsel informed the Court that more than 520,000 claims have been filed via the claims submission process. Accordingly, 1,000 opt-outs represents less than one percent of the actual claims, and this does not consider the size of the potential class, which may be even larger.  Overall, the objections and opt-outs in this action are no bar to approval of the settlement, and the fact that so few have been filed weighs in favor of approval.

7.   *The Public Interest*

Federal policy favors class action settlement.  *UAW*, 497 F.3d at 632.   Additionally, "there is a strong public interest in encouraging settlement of complex litigation and class action suits because they are 'notoriously difficult and unpredictable' and settlement conserves judicial

resources." *In re Cardizem*, 218 F.R.D. at 530 (quoting *Granada Invs., Inc.*, 962 F.2d at 1205 (6th Cir. 1992)).  The Court finds that the proposed settlement serves the public interest by resolving potentially complex legal proceedings and preserving significant judicial resources that would be expended should this action proceed to additional discovery and trial.

In conclusion, the Court's consideration of the seven factors discussed above and the analysis conducted in the order granting preliminary approval demonstrates that the proposed settlement should be approved as fair, reasonable, and adequate.  Accordingly, the Court finds that the proposed settlement is fair, reasonable, and adequate and satisfies the requirements of Federal Rule of Civil Procedure 23(e)(2).

### III.    Attorneys' Fees, Costs, Expenses, and Incentive Awards

Having determined that final approval of the settlement agreement is warranted, the Court now turns to the issue of attorneys' fees, costs, expenses, and incentive awards.  As part of the settlement agreement, Skechers and *Grabowski* agreed to the establishment a $5 million common fund for payment of attorneys' fees, costs, and expenses that is separate from and in addition to the $40 million settlement fund.  All parties have agreed that any award of fees and expenses should be paid from the common fund.  The Court's task, then, is to apportion the fund.  Attorneys for *Grabowski*, as Class Counsel, seek a substantial portion of the fund.  That said, *Grabowski* does not object to the fee and expense applications by *Loss* and *Hochberg*.  Rather, *Grabowski* argues that any award *Loss* and *Hochberg* should be commensurate with the benefit counsel for those plaintiffs provided to the class.  In briefings on the issue and at the final fairness hearing, *Grabowski* opposed the award requested by counsel for *Stalker* on grounds that not only did *Stalker*'s action not benefit the class, but such actions actually had potential to harm the class.

In the typical class action, the first issue the Court must address is whether to award fees and expenses on the lodestar or multiplier approach. Because Skechers agreed to establish the $5 million common fund for fees and expenses, this is not the typical case. No party has fees and expenses that would consume the entire common fund if awarded under the lodestar approach. Therefore, the Court will award fees, costs, and expenses using the multiplier method so that the common fund will be consumed.

When ruling upon the various applications for fees, the Court must consider six factors (collectively referred to as the *Ramey* factors):

> (1) the value of the benefit rendered to the plaintiff class; (2) the value of the services on an hourly basis; (3) whether the services were undertaken on a contingent fee basis; (4) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (5) the complexity of the litigation; and (6) the professional skill and standing of counsel involved on both sides.

*Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 352 (6th Cir. 2009) (quoting *Bowling v. Pfizer, Inc.,* 102 F.3d 777, 780 (6th Cir.1996)); *see also Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1196 (6th Cir. 1974), *cert denied*, 422 U.S. 1048 (1975). District courts in this circuit generally consider the most important factors to be the value of the benefit rendered and the value of the services on an hourly basis. *In re Sulzer Hip Prosthesis and Knee Prosthesis Liab. Litg.*, 268 F. Supp. 2d 907, 930 (N.D. Ohio 2003) (citing *Bowling v. Pfizer, Inc.*, 922 F. Supp. 1261, 1280 (S.D. Ohio 1996)). One top of these factors, the Court follows the overarching principle that any award of attorneys' fees must be "reasonable under the circumstances.'" *Moulton*, 581 F.3d at 352 (quoting *Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d 513, 516 (6th Cir. 1993)).

## A. Application of the *Ramey* Factors to Requests for Attorneys' Fees

The Court must consider the application for attorneys' fees by *Grabowski*, *Hochberg*, *Loss*, and *Stalker*. Because several of the *Ramey* factors are common to each party applying for

an award of fees, the Court considers them jointly.  The two most important factors – value of benefit rendered to the class and value of services on an hourly basis – require individualized analysis.  The Court considers those factors separately for the parties seeking attorneys' fees.

### 1. Analysis of Ramey *Factors Common to All Plaintiffs' Counsel*

Four of the six *Ramey* factors are common to all plaintiffs' counsel seeking an award of attorneys' fees.  As such, the Court analyzes those factors jointly.

### a.   Whether Services Were Under Taken on a Contingent Fee Basis

Plaintiffs' counsel have represented to the Court that each of the respective nationwide class actions was undertaken on a contingent fee basis.  "[C]ontingency fee arrangements indicated that there is a certain degree of risk in obtaining a recovery."  *In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d 1029, 1043 (S.D. Ohio 2001).  Each of the plaintiffs' counsel spent considerable time on this action at the risk of receiving no compensation.  Therefore, this factor supports some award of attorneys' fees to plaintiffs' counsel.

### b.   Society's Stake in Rewarding Attorneys Who Produce Such Benefits in Order to Maintain an Incentive to Others

"Encouraging qualified counsel to bring inherently difficult and risky but beneficial class actions . . . benefits society."  *In re Cardizem*, 218 F.R.D. at 534.  Many of the class members in this action would be financially unable to pursue the claims asserted on their own accord.  Additionally, the fact that individual plaintiffs may only receive a small recovery also impedes individual efforts.  In fact, it appears to the Court that the majority of class members would have received nothing in the absence of this settlement.  "Thus, attorneys who take on class action matters enabling litigants to pool their claims provide a huge service to the judicial process and should be rewarded for their efforts.  *In re Rio Hair Naturalizer Prods. Liab. Litig.*, No. MDL 1055, 1996 WL 780512, at *17 (E.D. Mich. Dec. 20, 1996).  The Court finds that this factor is

satisfied and supports some award of attorneys' fees to plaintiffs' counsel.

c.   Complexity of the Litigation

The Court has addressed this factor several times in the preceding discussion and analysis of the settlement agreement.   This action presents multiple challenges and difficult issues concerning damages and causation.   The evidentiary issues, including the perceived need for numerous and competing expert witnesses, are also complex.   Added to these, the size of the class increases the level of complexity.   Accordingly, this factor supports some award of attorneys' fees to plaintiffs' counsel.

d.   The Professional Skill and Standing of Counsel Involved on Both Sides

As evidenced by the motion practice in this action and prior experience in other class action litigation, it appears to the Court that the various plaintiffs' counsel and counsel for Skechers are skilled attorneys who brought experience, skill, knowledge, and legitimacy to this action.   In particular, counsel for *Grabowski*, serving as court-appointed Class Counsel, are nationally recognized in the field of class actions.   Class Counsel has developed particular expertise in pursuing consumer fraud claims against makers of athletic shoes and other apparel. Their expertise, reputation, and congeniality allowed them to work swiftly and amicably with Skechers and the Federal Trade Commission to bring about a fair, reasonable, and adequate settlement of the class claims.   The ability of Class Counsel to negotiate a favorable settlement in the face of formidable legal opposition further evidences the reasonable of the fee award requested.   The Court finds that this factor supports some award of attorneys' fees to plaintiffs' counsel.

2.   *Analysis of Remaining* Ramey *Factors Unique to Plaintiffs' Counsel*

The two remaining *Ramey* factors – value of benefit rendered to the plaintiff class and

value of the services on an hourly basis – must be analyzed individually for each of the plaintiffs' counsel.  Doing so demonstrates that some award of attorneys' fees is reasonable for all counsel but not necessarily in the amounts requested.

### a. Value of the Benefit Rendered to the Plaintiff Class

#### i. Class Counsel/Counsel for *Grabowski*

Counsel for *Grabowski*, who also serves and Class Counsel, has conferred enormous benefit on the class in this action.  *Grabowski* was the first nationwide class action filed against Skechers that alleged consumer fraud.  Counsel has diligently pursued the action by conducting extensive discovery, developing evidence, interviewing Skechers's key employees, and negotiating the terms of this settlement.  These efforts extend across a multi-year period, from 2010 to present.  The result of counsel's efforts is the $40 million settlement fund and the additional $5 million common fund for payment of attorneys' fees and expenses.  Because of counsel's efforts, class members who properly file claims will receive a payment amount that is calculated to exceed the likely measure of damages they would receive at trial – the difference between the purchase price of the toning shoes as represented and the value of the product received.

In addition to monetary benefits, counsel's efforts resulted in injunctive relief in the form of an agreement between Skechers and the Federal Trade Commission.  Pursuant to the terms of that agreement, Skechers has agreed to amend or stop altogether certain marketing practice related to the toning shoes at issue.  Counsel for *Grabowski* played an integral role in bringing about the injunctive and monetary relief available to class members as a result of this settlement.  For all of the foregoing reasons, the Court finds that counsel for *Grabowski*, as Class Counsel, shall be awarded attorneys' fees in the amount of $4,278,883.74.  This award is

reasonable in light of the substantial benefits counsel for *Grabowski* conferred on the class.

### ii.   Counsel for *Loss*

As recounted above, counsel for *Grabowski* does not object to an award of attorneys' fees to counsel for *Loss*.  At the fairness hearing, *Grabowski* represented that counsel for *Loss* has provide some benefit to the class and that any award of fees should merely been proportional to that benefit.

The Court agrees that counsel for *Loss* has conferred a benefit on the class.  In particular, *Loss*, although filed two years after *Grabowski*, was the first class action filed in the Western District of Kentucky.  Filing of the action at least partially assisted in the transfer of the other nationwide class actions into the MDL proceedings for consolidated treatment.  Additionally, counsel for *Loss* provided input and guidance that assisted the Court in establishing a method of resolving the consumer fraud actions separate and apart from the personal injury claims in the MDL.  For all of the foregoing reasons, the court founds that counsel for *Loss* shall be awarded attorneys' fees in the amount of $75,037.05.  This award is reasonable in light of the limited, but nonetheless important, benefits counsel for *Loss* conferred on the class.

### iii.   Counsel for *Hochberg*

Like *Loss*, counsel for *Grabowski* does not oppose an award of attorneys' fees to counsel for *Hochberg*.  Again, *Grabowski* simply asks the Court to award fees commensurate with the benefit *Hochberg* conferred on the class.

Counsel for *Hochberg* has conveyed significant benefits on the class.  *Hochberg*, which was filed approximately one year after *Grabowski*, originated in the Eastern District of New York.  It was subsequently transferred to this Court for consolidated treatment in the MDL proceedings.  Part of the impetus behind *Hochberg*'s filing was the 9th Circuit's decision to hear

*Mazza v. American Honda Motor Co., Inc.*, 666 F.3d 581 (9th Cir. 2012), which ultimately limited the application of California's consumer protection laws to nationwide class actions. Accordingly, counsel for *Hochberg* represented to the Court that it filed its action to preserve the rights of New York consumers against Skechers in the event that it was determined that *Grabowski* could not represent those potential class members from New York.

In addition to protecting the right of New York consumers, counsel for *Hochberg* successfully opposed Skechers's motion to dismiss or, in the alterative, to transfer or stay the action. After denying the motion, Magistrate Judge Marilyn D. Go of the Eastern District of New York held a status conference, allowed discovery to proceed, and set a case schedule. Only after *Hochberg* was transferred to the MDL were those deadlines abated.

Actions by counsel for *Hochberg* benefited the class by protecting the rights of New York consumers and by advancing a case separate from *Grabowski*. Pressure from *Hochberg* likely influenced Skechers to push ahead on the global settlement sought by *Grabowski*. For all of the foregoing reasons, the court finds that counsel for *Hochberg* shall be awarded attorneys' fees in the amount of $333,708.03. This award is reasonable in light of the significant benefits counsel for *Hochberg* conferred on the class.

iv.   Counsel for *Stalker*

Finally, counsel for *Stalker* also seeks an award of attorneys' fees. Counsel for *Grabowski* opposes the amount of the fee requested by *Stalker*. Although initially opposing any fee, at the final fairness hearing *Grabowski* indicated that some fee might be appropriate but that the initial $750,000 requested by *Stalker* was not commensurate with the limited benefit *Stalker* bestowed on the class. *Grabowski* objected on grounds that *Stalker* has done little to benefit the class and, in fact, had the potential to harm the class by filing a premature motion for class

19

certification.

At the final fairness hearing and in briefs to the Court, counsel for *Stalker* argued that it discovered the initial cause of action for consumer fraud claims against manufactures of toning shoes. In fact, counsel represented that it entered into preliminary discussions with counsel for *Grabowski* about filing suit against Skechers. Counsel for *Grabowski* does not deny that it had some discussions with *Stalker*'s counsel about toning shoes, but it objects to any assertion that they ever discussed filing suit against Skechers. And despite the initial discussions, counsel for *Grabowski* claims that *Stalker*'s counsel did not help develop the claim, aid in discovery, or participate in the negotiations that led to the settlement that has been now been approved by the Court.

*Stalker* also seeks to justify its request for attorneys' fees on grounds that it aggressively litigated its case before it was stayed in the Central District of California. In support of this argument, counsel points to the fact that it was the first to file a motion for class certification. Apparently *Stalker*'s counsel filed the class certification motion because a local rule in the Central District of California requires such a motion within thirty days of filing a purported class action. On this issue counsel for *Grabowski* raises three concerns. First, counsel for *Grabowski* represented to the Court that it routinely practices in the Central District and this particular local rule is frequently waived upon request. Counsel for *Stalker* apparently made no request for waiver. Second, counsel for *Grabowski* claims that *Stalker* made no request to waive out of a desire to certify a class and effectively gain control over the litigation before other parties. Finally, *Grabowski* points out that had the *Stalker* action not been stayed and the motion to certify the class been denied, this would have harmed rather than benefited the interest of the class that was eventually certified for settlement purposes. *Grabowski* further represents that

*Stalker*'s motion for certification was so premature and not based on any evidence that it is highly likely that it would have been denied.

The Court admittedly is in a poor position to know in detail all of the procedural wrangling that occurred between the parties in the Central and Southern Districts of California. Based on the arguments presented at the fairness hearing and the parties' written briefs, the Court finds that counsel for *Stalker* should be awarded some portion of attorneys' fees in this action. But, because counsel for *Stalker* has done little to prove that its actions provided substantial benefits to the class the Court finds that counsel is only entitled to a limited award. Counsel for *Stalker* shall receive $266,629.00 in attorneys' fees. This is the lodestar amount of fees that results from multiplying the average hourly rate billed by *Stalker's* attorney by the number of hours they expended in pursuit of their case. This award is reasonable in light of the limited benefits counsel for *Stalker* conferred on the class.

### b. Value of Services on an Hourly Basis

Plaintiffs' counsel have expended significant numbers of hours pursuing the claims in this action. The Court believes that a lodestar cross-check demonstrates the reasonableness of the fees awarded in the prior section. The Sixth Circuit has approved a district court's use of a lodestar cross-check in prior cases. *See, e.g.*, *Bowling*, 102 F.3d at 780. "To determine the 'lodestar' figure, the Court multiplies the proven number of hours reasonably expended on the litigation by a reasonable hourly rate." *Lonardo v. Travelers Indem. Co.*, No. 1:06-CV-962, 2010 WL 1416698, at *18 (N.D. Ohio Mar. 31, 2010) (citations omitted).

### i. Lodestar Cross-Check for *Grabowski*

Computation of *Grabowski*'s lodestar based on figures submitted to the Court results in fees of $2,003,364.00. In the prior section, the Court awarded *Grabowski* $4,278,883.74 in fees.

This is a multiplier of 2.14, and only represents 9.5 percent of the total $45 million settlement fund negotiated by *Grabowski*.  Multipliers of 2.0 have been previously approved in the Sixth Circuit, and the excellent result achieve in this action support a multiplier only slightly higher than 2.0.  *See, e.g.*, *Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d 513, 517 (6th Cir. 1993) (approving multiplier of 2.0).

### ii.   Lodestar Cross-Check for *Loss*

Based on figures submitted to the Court, counsel for *Loss* had a lodestar of $49,885.00.  Counsel was awarded $75,037.05 in fees in the prior section, which represents a multiplier of 1.50 or less than 1 percent of the total settlement.  This award is reasonable in light of the limited benefit *Loss* conferred on the class.

### iii.   Lodestar Cross-Check for *Hochberg*

Calculating the lodestar for *Hochberg*'s counsel using figures submitted to the Court results in a lodestar of $157,223.25.  Counsel for *Hochberg* has been awarded $333,708.03.  The fee awarded equates to a multiplier of 2.12 and less than 1 percent of the total settlement.  Again, this award is reasonable in light of the significant benefit *Hochberg* conferred on the class.

### iv.   Lodestar Cross-Check for *Stalker*

The Court has awarded *Stalker* its lodestar fees of $266,629.00 without a multiplier.  The decision to only award *Stalker* fees based on the lodestar reflects the limited benefit *Stalker* conferred on the class.  This award is reasonable in light of the limited benefit.

### B.  Award of Costs and Expenses

"As with attorneys' fees, an award of costs and expenses is also a matter left to the discretion of the trial court."  *In re Rio Hair*, 1996 WL 780512 at *19.  "[Counsel] is entitled to reimbursement of all reasonable out-of-pocket litigation expenses and costs in the prosecution of

claims and in obtaining settlement, including expenses incurred in connection with document productions, consulting with experts and consultants, travel and other litigation-related expenses." *In re Cardizem*, 218 F.R.D. at 535.

In the present action, Skechers has agreed to pay all expenses out of the $5 million common fund for attorneys' fees and expenses. *Grabowski* requests costs expenses of $42,826.26. *Loss* seeks costs and expenses of $462.95. *Hochberg* asks for costs and expense of $1,291.97. Finally, *Stalker* asks for costs and expenses of $1,161.00. The Court has reviewed the documentation accompany and justifying these requests for costs and expense. The Court finds them reasonable and each party will be granted costs and expenses as requested.

Combined, the parties will receive total attorneys' fees and costs and expenses in the following amounts: 1) counsel for *Grabowski* - $4,321,710.00; 2) counsel for *Loss* - $75,500.00; 3) counsel for *Hochberg* - $335,000.00; 4) counsel for *Stalker* - $267,790.00. These awards will consume the entire $5 million common fund established by Skechers for attorneys' fees and expenses.

### C.  Incentive Awards

Skechers has agreed to pay representative plaintiffs Grabowski and Morga $2,500 apiece in incentive awards. "The Sixth Circuit has held that incentive awards to class representatives may be appropriate in some cases, but has not defined circumstances justifying incentive awards." *Lonardo*, 2010 WL 1416698 at *16 (citing *Hadix v. Johnson*, 322 F.3d 895, 898 (6th Cir. 2003)). District courts in this circuit have looked at the following factors in determining whether to approve incentive awards for class representatives:

> (1) the action taken by the Class Representatives to protect the interests of Class Members and others and whether these actions resulted in a substantial benefit to Class Members; (2) whether the Class Representatives assumed substantial direct

and indirect financial risk; and (3) the amount of time and effort spent by the Class Representatives in pursuing the litigation.

*Enter. Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 250 (S.D. Ohio 1991).

The Court notes that no objections were made to the request for incentive awards. In addition, the incentive awards do not diminish class recovery and relatively small awards. Skechers has already agreed to pay these awards. Therefore, the Court finds that these awards are appropriate.

## CONCLUSION

For all of the foregoing reasons, and pursuant to Federal Rule of Civil Procedure 23, the Court finds that the settlement agreement entered into by the parties is fair, reasonable, and adequate. The Court will grant *Grabowski*'s motion for final approval of class action settlement and request for attorneys' fees and expenses by separate order consistent, and entered concurrently, with this memorandum opinion.